Opinion for the Court filed by Circuit Judge KAVANAUGH, in which Senior Circuit Judge SILBERMAN joins.
Dissenting opinion filed by Circuit Judge ROGERS.
KAVANAUGH, Circuit Judge:
A group of Protestant Navy chaplains sued the Navy, alleging that the Navy’s operation of its retirement system discriminates in favor of Catholic chaplains in violation of the Establishment Clause. But the plaintiffs do not claim that the Navy actually discriminated against any of them. We conclude that plaintiffs lack standing to bring this claim, and we therefore affirm the judgment of the District Court.
I
The U.S. Navy maintains a Chaplain Corps of commissioned Navy officers to meet the spiritual needs of those who serve in the Navy and their families. Like other officers, chaplains are subject to military regulations with respect to hiring, promotion, and retirement.
*759 The Navy divides its chaplains into four categories—Catholic, liturgical Protestant, non-liturgical Protestant, and Special Worship. As we explained in a previous opinion in this litigation, “liturgical Protestant” includes Protestant denominations that follow an established liturgy in worship services and practice infant baptism, such as Lutheran, Episcopal, Methodist, Presbyterian, and Congregational. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 294 (D.C.Cir.2006) (Chaplaincy). “Non-liturgical Protestant” includes Protestant denominations that do not follow a formal liturgy in worship services and that baptize at the age of reason, such as Baptist, Evangelical, Pentecostal, and Charismatic. Id. at 294. The “Special Worship” category refers to other religious faiths, both Christian and non-Christian, and it includes Jewish, Christian Science, Seventh-Day Adventist, Mormon, Buddhist, Hindu, Muslim, Jehovah’s Witness, and Unitarian. Id. at 295 n. 3.
Plaintiffs are non-liturgical Protestant Navy chaplains, both current and retired.[1] Plaintiffs filed suit, alleging that the Navy discriminates in favor of Catholic chaplains in certain aspects of its retirement system. See In re Navy Chaplaincy, 516 F.Supp.2d 119, 121 (D.D.C.2007). Plaintiffs also sought a preliminary injunction.
The District Court initially denied plaintiffs’ preliminary injunction motion, finding that the chaplains had not shown the necessary irreparable injury to support a preliminary injunction. See Adair v. England, Nos. 00-cv-566 & 99-cv-2945, slip op. at 2 (D.D.C. Feb. 7, 2005). On appeal, this Court reversed, explaining that, for purposes of a preliminary injunction, the allegation of an Establishment Clause violation itself demonstrates sufficient harm to satisfy the'irreparable injury prong of the preliminary injunction test—assuming, of course, that the party has standing to allege the violation in the first place. See Chaplaincy, 454 F.3d at 303-04 & n. 8. The Court therefore vacated the denial of a preliminary injunction arid remanded for the District Court to consider the remaining factors in the preliminary injunction analysis, including likelihood of success on the merits. See id. at 304-05.
On remand, in a well-reasoned opinion, the District Court concluded that plaintiffs lacked standing to bring this claim. This appeal followed.
II
Article III of the Constitution limits the judicial power to deciding “Cases” and “Controversies.” “One of the controlling elements in the definition of a case or controversy under Article III is standing.” Hein v. Freedom From Religion Foundation, Inc., — U.S.-, 127 S.Ct. 2553, 2562, 168 L.Ed.2d 424 (2007) (internal quotation marks and alteration omitted).[2] The three factors establishing the “irreducible constitutional minimum” of standing are well established. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First and most relevant here is injury-in-fact: A would-be plaintiff must have suffered “an invasion of a legally protected interest” that is (i) “concrete and particularized” rather than abstract or general *760 ized, and (ii) “actual or imminent” rather than remote, speculative, conjectural or hypothetical. Id. (internal quotation marks omitted); see also Pub. Citizen, Inc. v. Nat’l Highway Traffic Safety Admin., 489 F.3d 1279, 1292-93 (D.C.Cir.2007). Second is causation: The asserted injury must be “fairly traceable to the challenged action of the defendant.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (internal quotation marks and alterations omitted). Third is redressability: It must be likely that a favorable decision by the court would redress the plaintiffs injury. Id. at 561, 112 S.Ct. 2130.
“[T]he law of Art. Ill standing is built on a single basic idea;—the idea of separation of powers.” Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The doctrine is “founded in concern about the proper— and properly limited—role of the courts in a democratic society.” Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The federal courts are “not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution.” Hein, 127 S.Ct. at 2562. “Vindicating the public interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive.” Lujan, 504 U.S. at 576, 112 S.Ct. 2130; see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474-75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).
Those critical and bedrock principles of separation of powers inform our approach to plaintiffs’ claim.
Ill
In reviewing the standing question, we must be “careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.” City of Waukesha v. EPA, 320 F.3d 228, 235 (D.C.Cir.2003). For purposes of our analysis in this case, we therefore must assume arguendo that the Navy’s operation of its retirement system favors ■ Catholic chaplains and disfavors non-liturgical Protestant chaplains in violation of the “clearest command of the Establishment Clause”—that “one religious denomination cannot be officially preferred over another.” Larson v. Valente, 456 U.S. 228, 244, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982). Even assuming that plaintiffs’ allegations are accurate, however, they do not have standing to bring this claim against the Navy because they have not sufficiently demonstrated their own injury-in-fact.
If plaintiffs had alleged that the Navy discriminated against them on account of their religion, plaintiffs would have alleged a concrete and particularized ham sufficient to constitute injury-in-fact for standing purposes. But plaintiffs have conceded that they themselves did not suffer employment discrimination on account of their religion. They have conceded that the Navy did not deny them any benefits or opportunities on account of them religion. See In re Navy Chaplaincy, 516 F.Supp.2d 119, 124-26 (D.D.C.2007). Rather, they suggest that other chaplains suffered such discrimination.
Plaintiffs argue that they nonetheless have standing for either of two reasons: (i) they are taxpayers who object to the Navy’s allegedly discriminatory operation of its chaplaincy program, or (ii) they have been subjected to the Navy’s “message” of religious preference as a result of the Navy’s running a retirement system that favors Catholic chaplains. We disagree. Because plaintiffs’ claim does not fit within the narrow confines of Establishment Clause taxpayer standing permitted by *761 Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), they do not have standing as taxpayers. See Hein v. Freedom From Religion Foundation, Inc., — U.S. -, 127 S.Ct. 2553, 2562-72, 168 L.Ed.2d 424 (2007). Nor do plaintiffs have standing based on their exposure to the Navy’s alleged “message” of religious preference.
A
As the Supreme Court has repeatedly held, a taxpayer’s interest in ensuring that appropriated funds are spent in accordance with the Constitution does not suffice to confer Article III standing. See Hein, 127 S.Ct. at 2563 (2007). Back in Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), taxpayers sued the Government, arguing that the Maternity Act of 1921 improperly invaded powers reserved to States by the Tenth Amendment. The Supreme Court rejected taxpayer standing in that case: “The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same....” Id. at 487, 43 S.Ct. 597; see also Doremus v. Bd. of Educ. of Hawthorne, 342 U.S. 429, 433-34, 72 S.Ct. 394, 96 L.Ed. 475 (1952).
In 1968, 45 years after Frothingham, the Supreme Court carved out a narrow exception to the general constitutional bar on taxpayer suits; the Court held that federal taxpayers had standing to bring an Establishment Clause challenge to federal financing for parochial schools. See Flast, 392 U.S. 83, 88 S.Ct. 1942. But according to Flast, taxpayers may bring an Establishment Clause challenge only when they challenge legislation passed pursuant to the Taxing and Spending Clause in Article I, § 8 of the Constitution. See id. at 102-OS, 88 S.Ct. 1942.
The Court has subsequently made clear that Flast is a very narrow exception to the general bar against taxpayer standing. In Valley Forge, for example, the plaintiffs argued that the Government violated the Establishment Clause when it transferred a tract of “surplus property” to a Christian college. Valley Forge Christian Coll. v. Americans United for Separation of Church & State, 454 U.S. 464, 467-68, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (internal quotation marks omitted). The Court found that the plaintiffs, a group composed of “90,000 taxpayer members,” did not have standing both because the challenged action was executive rather than legislative and because the property transfer was an exercise of executive authority pursuant to legislation passed under the Property' Clause in Article IV, § 3 of the Constitution rather than the Taxing and Spending Clause in Article I, § 8. Id. at 469, 479-80, 102 S.Ct. 752 (internal quotation marks omitted).
In Bowen v. Kendrick, the Supreme Court allowed a group of federal taxpayers to challenge the Adolescent Family Life Act, a statute appropriating funds for religious organizations, among others, to fight teen pregnancy. 487 U.S. 589, 593, 596-97, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988). The Court found that plaintiffs’ claim challenged a program expressly authorized by Congress under the taxing and spending power, thus fitting within Flast. Id. at 619, 108 S.Ct. 2562. The key to Bowen’s conclusion, as the Court has subsequently explained, was that the statute was “ ‘at heart a program of disbursement of funds pursuant to Congress’ taxing and spending powers’ ” and that plaintiffs’ claims were concerned with the expenditure of funds “ ‘pursuant to the AFLA’s statutory mandate.’ ” Hein, 127 S.Ct. at 2567 (quoting *762 Bowen, 487 U.S. at 619-20, 108 S.Ct. 2562) (emphasis omitted).
In its recent decision in Hein, the Court declined to expand Flast to encompass discretionary Executive Branch spending: “Because almost all Executive Branch activity is ultimately funded by some congressional appropriation, extending the Flast exception to purely executive expenditures would effectively subject every federal action — be it a conference, proclamation or speech — to Establishment Clause challenge by any taxpayer in federal court.” Id. at 2569. Although Hein did not eliminate the Flast exception to the bar against taxpayer standing, the case forcefully emphasized the exception’s extremely limited contours: “It is significant that, in the four decades since its creation, the Flast exception has largely been confined to its facts.” Id. at 2568-69. As Hein explained, the Court has limited the “expansion of federal taxpayer and citizen standing in the absence of specific statutory authorization to an outer boundary drawn by the results in Flast.” Id. at 2569 (internal quotation marks and emphasis omitted).[3]
In this case, plaintiffs’ claim does not fit within the narrow Flast exception. No legislative enactment expressly authorizes or appropriates funds for the Navy to favor Catholic chaplains in its retirement system. Plaintiffs cite, for example, the statutes establishing the Navy Chaplain Corps, but those statutes make no reference to denominational category, only to chaplains generally. See 10 U.S.C. §§ 5142, 5150. And plaintiffs, who themselves are chaplains, obviously do not contend that congressional legislation establishing the Navy Chaplaincy itself violates the Establishment Clause; they merely want the Navy to operate the Chaplain Corps differently. Cf. Katcoff v. Marsh, 755 F.2d 223 (2d Cir.1985) (approving military chaplaincy program).
As in Hein, the challenged expenditures here — extra salary and retirement-related benefits allegedly provided to Catholic chaplains — “were not expressly authorized or mandated by any specific congressional enactment.” Hein, 127 S.Ct. at 2568. Indeed, plaintiffs contend that the Chaplain Corps is being operated by the Navy in contravention of the law, not in accordance with the law. See Plaintiffs’ Br. 48 (“Appellees have not followed either the law or the DOD regulations.”). Under the Supreme Court’s precedents, that contention directly undermines any claim to taxpayer standing. In sum, plaintiffs do not have standing as taxpayers.
B
Plaintiffs alternatively contend that they have standing because “Establishment Clause injury flows from the forbidden messages of preference or disapproval” inherent in the Navy’s denominational preference. Plaintiffs’ Br. 28. In so arguing, they rely primarily on this Court’s decision in Chaplaincy, which explained that for the purposes of a preliminary injunction, the “mere allegation” of an Establishment Clause violation is always sufficient to show irreparable harm. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 303-04 (D.C.Cir.2006). Plaintiffs claim that because their allegations demonstrate irreparable injury for preliminary *763 injunction purposes, they have necessarily shown injury-in-fact for standing purposes.
But the Court in Chaplaincy merely held that the allegation of an Establishment Clause violation is sufficient to satisfy the irreparable harm prong of the preliminary injunction standard—presupposing that a party has standing to allege such a violation. See id. at 303-04 & n. 8. A per se rule defining automatic injury-in-fact for every plaintiff who claims an Establishment Clause violation—as plaintiffs strain to find in the Chaplaincy opinion—would run counter to decades of settled jurisprudence setting forth the requirements for standing in Establishment Clause cases. Jurisdictional requirements are not disposed of so easily, and the Court in Chaplaincy did not purport to make the sweeping change attributed to it by plaintiffs.
Apart from citing Chaplaincy, plaintiffs also claim injury-in-fact from their being subjected to the “message” of religious preference conveyed by the Navy’s allegedly preferential retirement program for Catholic chaplains. The program, they say, makes them feel like second-class citizens within the Navy Chaplaincy even if they themselves have not suffered discrimination on account of their religion.
As the Supreme Court has often stated, mere personal offense to government action does not give rise to standing to sue. Allen v. Wright, 468 U.S. 737, 752-54, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 575-76, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). “By the mere bringing of his suit, every plaintiff demonstrates his belief that a favorable judgment will make him happier. But although a suitor may derive great comfort and joy” from knowing that the Government is following constitutional imperatives, “that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury.” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 107, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). “Recognition of standing in such circumstances would transform the federal courts into no more than a vehicle for the vindication of the value interests of concerned bystanders.” Allen, 468 U.S. at 756, 104 S.Ct. 3315 (internal quotation marks omitted).
Plaintiffs respond that their claim is similar to religious display and prayer cases where courts have found (or at least apparently assumed) standing. See, e.g., McCreary County v. ACLU, 545 U.S. 844, 851-52, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005) (Ten Commandments displays that were “readily visible” to citizens conducting civic business) (internal quotation marks omitted); Van Orden v. Perry, 545 U.S. 677, 681-82, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005) (Ten Commandments display on the grounds of the Texas State Capitol that petitioner frequently encountered); County of Allegheny v. ACLU, 492 U.S. 573, 578, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (creche display in county courthouse and menorah display outside city-county building); Suhre v. Haywood County, 131 F.3d 1083, 1086 (4th Cir.1997) (Ten Commandments display in county courtroom; noting that display cases are “particularized subclass of Establishment Clause standing jurisprudence”); see also Lee v. Weisman, 505 U.S. 577, 580, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (governmental prayer at school graduation); Marsh v. Chambers, 463 U.S. 783, 784-85, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983) (daily prayer at opening of state legislature); Sch. Dist. of Abington Township v. Schempp, 374 U.S. 203, 205-12, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (daily Bible reading in class); Engel v. Vitale, 370 U.S. 421, 422-23, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (official state prayer in class).
*764 These Supreme Court cases do not all directly discuss the standing issue. It is a well-established rule that “cases in which jurisdiction is assumed sub silentio are not binding authority for the proposition that jurisdiction exists.” John Doe, Inc. v. DEA 484 F.3d 561, 569 n. 5 (D.C.Cir.2007) (internal quotation marks omitted). In any event, accepting those cases as precedents on standing,[4] we nonetheless find significant differences between plaintiffs’ case and the religious display and prayer cases. In the religious display and prayer cases, the Government was actively and directly communicating a religious message through religious words or religious symbols—in other words, it was engaging in religious speech that was observed, read, or heard by the plaintiffs in those cases. Here, by contrast, the Navy is not communicating a religious message through religious words or religious symbols. Plaintiffs’ objection here is more akin to the objection to the property transfer in Valley Forge, where the Court stated that the plaintiffs failed “to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. Ill, even though the disagreement is phrased in constitutional terms.” Valley Forge, 454 U.S. at 485-86, 102 S.Ct. 752 (emphasis added and omitted); see also Suhre, 131 F.3d at 1086 (quoting Valley Forge and stating “a mere abstract objection to unconstitutional conduct is not sufficient to confer standing”).
Plaintiffs’ argument would extend the religious display and prayer cases in a significant and unprecedented manner and eviscerate well-settled standing limitations. Under plaintiffs’ theory, every government action that allegedly violates the Establishment Clause could be re-characterized as a governmental message promoting religion. And therefore everyone who becomes aware of the “message” would have standing to sue. The neighbors in Valley Forge, the hotel workers at a conference for faith-based organizations in Hein, the list goes on—all could have obtained standing to sue simply by targeting not the government’s action, but rather the government’s alleged “message” of religious preference communicated through that action. Indeed, as plaintiffs’ counsel acknowledged at oral argument, under plaintiffs’ standing theory any recipient of the Navy’s “message” in this case, including the judges on this panel, would have standing to bring suit challenging the allegedly discriminatory Chaplain Corps. Oral Arg. Tr. at 6-7. The jurisdictional requirements of Article III are not so manipulable. They do not allow anyone who becomes aware of a government action that allegedly violates the Establishment Clause to sue over it on the ground that they are offended by the allegedly unconstitutional “message” communicated by that action. In the government employment context at issue here, it thus comes as no surprise that neither plaintiffs nor the dissent has cited any case holding that a plaintiff can maintain a religious employment discrimination suit under the Religion Clauses when complaining about employment discrimination suffered by others, not by the plaintiff himself or herself. We think the reason for the dearth of precedent is evident: When plaintiffs are not themselves affected by a government action except through their abstract offense at the message al- *765 Iegedly conveyed by that action, they have not shown injury-in-fact to bring an Establishment Clause claim, at least outside the distinct context of the religious display and prayer cases.
To be sure, we recognize that plaintiffs’ creative analogy to the religious display and prayer cases has some surface logic. But the implications of plaintiffs’ theory for standing doctrine are quite radical: Plaintiffs seek to use the religious display and prayer cases to wedge open the courthouse doors to a wide range of plaintiffs alleging Establishment Clause violations who were previously barred by bedrock standing requirements — requirements that are essential to preserving the separation of powers and limited judicial role mandated by the Constitution. We decline the invitation to transform Establishment Clause standing doctrine in this way. What the Supreme Court said last year in Hein applies just as well to plaintiffs’ reliance on the religious display and prayer cases here: “It is a necessary concomitant of the doctrine of stare decisis that a precedent is not always expanded to the limit of its logic.” Hein, 127 S.Ct. at 2571.
We affirm the judgment of the District Court.

So ordered.

. Plaintiffs also include certain organizations of non-liturgical Protestant chaplains. Because the organizations have standing in these circumstances only if one of their individual members has standing, we do not address them separately. See Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 342-43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

. In referring to Hein throughout our opinion, we are referring specifically to Justice Alito’s opinion, which is the binding opinion of the Court in that case. See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

. The Flast exception may be further limited to Congress's disbursement of federal funds outside the Government. In both Flast and Bowen v. Kendrick, the only two Supreme Court cases upholding taxpayer standing, the statutes authorized disbursement of federal funds to outside entities, including religious organizations. But we need not address that question in this case given that plaintiffs’ argument for taxpayer standing fails at a more basic level.

. See generally Doe v. Tangipahoa Parish Sch. Bd., 494 F.3d 494, 499-502 (5th Cir.2007) (DeMoss, J., concurring); Ira C. Lupu & Robert W. Tuttle, Ball on a Needle: Hein v. Freedom from Religion Foundation, Inc. and the Future of Establishment Clause Adjudication, 2008 B.Y.U. L.Rev. 115, 158-64 (2008).