## In the
# United States Court of Appeals
### For the Seventh Circuit

No. 05-2749

JOAN LASKOWSKI and DANIEL M. COOK,

*Plaintiffs-Appellants,*

*v.*

MARGARET SPELLINGS, in her official capacity as
Secretary of the United States Department of Education,

*Defendant-Appellee,*

*and*

UNIVERSITY OF NOTRE DAME,

*Defendant-Intervenor-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 03 C 1810—**Larry J. McKinney**, *Judge.*

---

ARGUED NOVEMBER 5, 2007—DECIDED OCTOBER 14, 2008

---

Before POSNER, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.*  This case returns to us following the
Supreme Court's order granting certiorari, vacating our

prior judgment, and remanding for further consideration in light of *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. ___, 127 S. Ct. 2553 (2007). *Univ. of Notre Dame v. Laskowski*, 127 S. Ct. 3051 (2007). The issue is whether the plaintiff-taxpayers have standing under *Flast v. Cohen*, 392 U.S. 83 (1968), to maintain an Establishment Clause challenge to a congressional grant after the funds have been fully paid and the grant has expired.

The taxpayers sued the Secretary of Education to enjoin payment of the money but did not seek a preliminary injunction. The grant recipient, the University of Notre Dame, intervened to protect its interest in the funds—$500,000 designated for a teacher-training program. While the suit was pending, however, the grant expired and the district court dismissed the case as moot. The taxpayers appealed and this panel split; the majority reversed, holding that although the claim against the Secretary of Education was moot, the suit was not. *Laskowski v. Spellings*, 443 F.3d 930, 933 (7th Cir. 2006). This conclusion flowed from the majority's view that restitutionary relief could be obtained against Notre Dame in the form of an order to repay the grant to the U.S. Treasury. *Id.* at 934-35.

That ruling has been called into question by the Supreme Court's decision in *Hein*, another Establishment Clause case from this circuit involving the issue of taxpayer standing—specifically, the question whether the *Flast* exception to the rule against taxpayer standing extended to suits challenging Executive Branch programs funded by general appropriations. *Hein* answered this question

"no," leaving the *Flast* exception in place but narrowly confining it to its facts.

After *Hein*, taxpayers continue to have standing to sue for alleged Establishment Clause violations wrought by specific congressional appropriations under the Article I, Section 8 taxing and spending power, but this standing extends only to suits to enjoin the violation. As circumscribed by *Hein*, the *Flast* exception does not extend to suits for retrospective monetary relief against private parties such as the restitutionary remedy envisioned against Notre Dame here. This case was properly dismissed as moot.

## I.  Background

In appropriating money for the Department of Education for fiscal year 2000, Congress earmarked $500,000 for a grant to the University of Notre Dame to support a teacher quality initiative. Consolidated Appropriations Act, 2000, Pub. L. No. 106-113, 113 Stat. 1501, 1501A-262 (Nov. 29, 1999). At the Department's request, Notre Dame submitted a grant application to receive the money, indicating that it would be used to fund its Alliance for Catholic Education ("ACE"), a teacher-training program aimed at training and placing teachers in underserved Catholic schools in poor neighborhoods. Notre Dame planned to replicate the ACE program in partnership with four other colleges and universities. The Department of Education awarded Notre Dame the grant.

Joan Laskowski and Daniel Cook, both federal taxpayers who had no connection to the grant, believed the

earmark violated the Establishment Clause and sued the Secretary of the Department of Education to enjoin payment. Notre Dame intervened as a defendant. Laskowski and Cook did not seek a preliminary injunction, however, and by the time the district court heard their case, the grant money had already been fully paid to Notre Dame and the one-time-only earmark expired. The district court dismissed the case as moot.

On appeal, the taxpayers conceded that their request for injunctive relief was moot. But they argued that another form of relief was available to save their suit from dismissal: the district court could order the Secretary of Education to seek recoupment of any wrongfully disbursed funds from Notre Dame. This panel unanimously rejected that argument, noting that the court has no authority to order the Secretary to seek recoupment from Notre Dame because an agency's decision not to take an enforcement action is within the discretion of the agency and is not reviewable. *See Laskowski*, 443 F.3d at 934 (citing *Heckler v. Chaney*, 470 U.S. 821, 831-33); *id.* at 940 (Sykes, J., dissenting).

But our panel was divided on whether the entire suit was moot. The majority concluded that it was not because the district court could *directly* order Notre Dame to pay back any wrongfully disbursed money as restitution to the U.S. Treasury for the government's Establishment Clause violation. *Id.* at 934-35. This alternative form of relief, the majority concluded, forestalled mootness and permitted the taxpayers' suit to proceed on the merits. *Id.* at 935-36. The Supreme Court granted certiorari, vacated

our judgment, and remanded for reconsideration in light of *Hein*.

## II. Discussion

We note at the outset that this case differs from *Hein* in that the taxpayers here brought an Establishment Clause challenge to a specific congressional earmark, not (as in *Hein*) a challenge to an Executive Branch program supported by general appropriations. The issue in *Hein* was whether the taxpayers had standing from the start; the issue here is mootness, a subset of standing doctrine. That doesn't change the analysis. Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Evtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (internal quotations and citations omitted). The taxpayers "must demonstrate standing separately for each form of relief sought." *Id.* at 185.

Everyone agrees that the expiration of the grant moots the taxpayers' claim against the Secretary of Education. *See Burke v. Barnes*, 479 U.S. 361, 363 (1987) (a challenge to the validity of a statute is mooted when the statute expires by its own terms); *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc*, 404 U.S. 412, 414-15 (1972); *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003). The concrete adversity that once supported standing to sue is gone; the prospective

injunctive relief sought against the Secretary is no longer available—more precisely, is pointless because there is nothing to enjoin. The question now is whether, in light of *Hein*, the taxpayers have standing to pursue the remedy proposed by our earlier panel opinion—restitution of the grant money by Notre Dame to the U.S. Treasury. We conclude the answer to this question must be "no."

The general rule is that a plaintiff has standing to sue only for injuries to his *own* interests that can be remedied by a court order. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This is because the "federal courts sit 'solely, to decide on the rights of individuals.'" *Hein*, 127 S. Ct. at 2562 (quoting *Marbury v. Madison*, 1 Cranch 137, 170 (1803)). "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'" *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotation marks omitted)). Established standing doctrine requires the party invoking the court's authority to demonstrate a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

A corollary is the rule that a plaintiff's payment of taxes is generally insufficient to establish standing to challenge the constitutionality of a government program or activity. *Hein*, 127 S. Ct. at 2562; *DaimlerChrysler*, 547 U.S. at 342-44; *Bowen v. Kendrick*, 487 U.S. 589, 618-20 (1988); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,*

*Inc.*, 454 U.S. 464, 477-80 (1982); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974); *United States v. Richardson*, 418 U.S. 166, 171-73 (1974); *Flast*, 392 U.S. at 101-06; *Doremus v. Bd. of Educ.*, 342 U.S. 429, 433-34 (1952); *Frothingham v. Mellon*, 262 U.S. 447, 486-89 (1923). The reason: taxpayers have no direct, personal interest in the money in the Treasury simply by virtue of having paid taxes and therefore suffer no redressable injury when the federal government puts money to unconstitutional use. *See Hein*, 127 S. Ct. at 2559 ("In light of the size of the federal budget, it is a complete fiction to argue that an unconstitutional federal expenditure causes an individual federal taxpayer any measurable economic harm."). The interest of individual taxpayers is shared in common with all other taxpayers and is therefore "too generalized and attenuated to support Article III standing." *Id.* at 2563.

Dating to *Frothingham*, decided with *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923), the rule against taxpayer standing has resisted exceptions, for good reason: "[I]f every federal taxpayer could sue to challenge any Government expenditure, the federal courts would cease to function as courts of law and would be cast in the role of general complaint bureaus." *Hein*, 127 S. Ct. at 2559. Standing requirements, including the bar against taxpayer standing, " 'are an essential ingredient of separation and equilibration of powers,' " *id.* at 2570 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 101 (1998)), and the " '[r]elaxation of standing requirements is directly related to the expansion of judicial power,' " *id.*

(quoting *Richardson*, 418 U.S. at 188 (Powell, J., concurring)).

This case concerns the lone exception to the rule against taxpayer standing. In *Flast*, the Supreme Court held that taxpayers have standing to raise Establishment Clause challenges to specific congressional exercises of the Article I, Section 8 taxing and spending power. *Flast*, 392 U.S. at 102-03. The plaintiff-taxpayers in *Flast* sued to enjoin federal appropriations made to religious schools under the Family and Secondary Act of 1965. *Id.* at 85. The Court permitted their Establishment Clause claim to proceed because they had challenged specific appropriations made pursuant to Congress's Article I, Section 8 taxing and spending power, and the Establishment Clause limits the exercise of that power. *Id.* at 103-04.

While taxpayers generally suffer no injury from the depletion of the federal Treasury, the injury supporting standing under *Flast* derives from "the very 'extract[ion] and spen[ding]' of 'tax money' in aid of religion." *DaimlerChrysler*, 547 U.S. at 348 (quoting *Flast*, 392 U.S. at 106). *Flast* did not, however, create an exception to the taxpayer-standing bar for *all* Establishment Clause cases. Only when a taxpayer challenges a specific congressional appropriation—not a government program or activity funded from general appropriations—will the link to the Article 1, Section 8 taxing and spending power be sufficient to support standing under *Flast*. *Hein*, 127 S. Ct. at 2569; *Flast*, 392 U.S. at 102-03.

This panel previously disagreed over whether the *Flast* exception was elastic enough to permit an otherwise moot

Establishment Clause claim to proceed against a private grant recipient for restitution to the U.S. Treasury. The majority implicitly concluded that it was, reasoning that the taxpayers had standing when the case was filed and it would make little sense to hold that the disbursement of the money and expiration of the grant divested them of the authority to recover the money for the Treasury via an order of restitution against Notre Dame. *Laskowski*, 443 F.3d at 934-35. The dissent disagreed, noting that restitution from a private party is not a known remedy for an Establishment Clause violation and that taxpayer standing under *Flast* is not, in any event, premised upon injury to the Treasury. *Id.* at 943-44. (Sykes, J., dissenting). Our respective positions are amply explained in our prior decision and need not be explored further here. After *Hein*, the issue is no longer whether *Flast* might logically be expanded to include standing to pursue the restitutionary relief posited by our prior panel majority; the Supreme Court has now made it abundantly clear that *Flast* is not to be expanded *at all*.

*Hein* involved an Establishment Clause challenge to conferences conducted by the President's Faith-Based and Community Initiatives program. A divided panel of this court concluded that the plaintiff-taxpayers had standing under *Flast* even though the conferences were funded out of general Executive Branch appropriations rather than a specific congressional exercise of the taxing and spending power. *See Hein*, 127 S. Ct. at 2561 (discussing this court's opinion, appearing under the name *Freedom from Religion Found., Inc. v. Chao*, 433 F.3d, 989, 994 (7th Cir.

2006)). The Supreme Court reversed, although the Court was divided on the rationale.

Writing for a three-justice plurality, Justice Alito first reiterated the Court's adherence to the *Frothingham* rule against taxpayer standing, *id.* at 2562-63, and then moved on to the *Flast* exception and the Court's subsequent taxpayer-standing jurisprudence. Tracing the Court's post-*Flast* case law, the plurality found it "significant that, in the four decades since its creation, the *Flast* exception has largely been confined to its facts." *Id.* at 2568-69. Because "*Flast* focused on congressional action," the plurality "decline[d] th[e] invitation to extend its holding to encompass discretionary Executive Branch expenditures." *Id.* at 2568.

The Court in *Hein* had been asked to overrule rather then simply limit *Flast*, and Justice Scalia, in a concurrence joined by Justice Thomas, would have done so. *Id.* at 2573-74 (Scalia, J., concurring). The plurality withheld judgment on this question. Because this court's opinion had expanded rather than applied *Flast*, the *Hein* plurality thought reconsideration of *Flast* was not strictly necessary to a decision in the case. *Id.* at 2571. Nonetheless, the plurality warned against extending *Flast* "to the limit of its logic." *Id.* The plurality noted that the Court's post-*Flast* taxpayer-standing jurisprudence had effectively come to rest on the position taken by Justice Powell in his concurrence in *United States v. Richardson*, 418 U.S. at 180: that the *Flast* exception should be limited " 'to an outer boundary drawn by the *results* in *Flast*.' " *Hein*, 127 S. Ct. at 2569 (quoting *Richardson*, 418 U.S. at 196) (emphasis in *Hein*).

On the present vitality of *Flast*, therefore, the *Hein* plurality essentially declared a truce with the concurring justices: "We do not extend *Flast*, but we also do not overrule it. We leave *Flast* as we found it." *Id.* at 2571-72. This is not a ringing endorsement. The Court is plainly disinclined to entertain any remedial innovations that depend upon an expansive interpretation of *Flast*.

We have previously held that Justice Alito's plurality opinion in *Hein* "is controlling because it expresses the narrowest position taken by the Justices who concurred in the judgment." *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 738 n.11 (7th Cir. 2008) (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)). The import of the plurality opinion is that the reach of *Flast* is now strictly confined to the *result* in *Flast.* And the result in *Flast* was that the taxpayers had standing to seek an injunction to halt a specific congressional appropriation alleged to violate the Establishment Clause.

Accordingly, we read *Hein* to mean that taxpayers continue to have standing to sue for injunctive relief against specific congressional appropriations alleged to violate the Establishment Clause, but that is all. Permitting a taxpayer to proceed against a private grant recipient for restitution to the Treasury as a remedy in an otherwise moot Establishment Clause case would extend the *Flast* exception beyond the limits of the result in *Flast*. After *Hein*, such an extension is unwarranted. *See generally Nicholson*, 536 F.3d at 739 (describing *Hein*'s refusal to expand *Flast*); *Chaplaincy of Full Gospel Churches v. U.S. Navy (In re Navy Chaplaincy)*, 534 F.3d 756, 762 (D.C. Cir.

2008) (*Hein* "forcefully emphasized the [*Flast*] exception's extremely limited contours"); *Hinrichs v. Speaker of the House of Representatives of the Ind. Gen. Assembly*, 506 F.3d 584, 598 (7th Cir. 2007) (emphasizing that *Hein* reinforced that the *Flast* exception to the rule against taxpayer standing "is a narrow one").

The only form of relief the taxpayers here had standing to seek—an injunction against the Secretary's disbursement of the allegedly unconstitutional grant—is no longer available because the grant was not a continuing one and it expired while the suit was pending in the district court. That claim is moot, and there is no residual standing to pursue a claim for restitutionary relief against Notre Dame, a private party, for reimbursement of the Treasury. The district court properly dismissed this case as moot.

AFFIRMED.