## In the
# United States Court of Appeals
### For the Seventh Circuit

No. 11-1566

ROBERT I. SHERMAN,

*Plaintiff-Appellant*,

*v.*

STATE OF ILLINOIS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:10-cv-03206-MPM-DGB—**Michael P. McCuskey**, *Judge.*

ARGUED NOVEMBER 2, 2011—DECIDED JUNE 4, 2012

Before EASTERBROOK, *Chief Judge*, and POSNER and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In 2008, the Illinois General Assembly passed a $5 million appropriation for a grant program to be administered by the Illinois Department of Commerce and Economic Opportunity (the Department). Robert Sherman, an atheist, discovered that among the grants the Department chose to issue was a $20,000 transfer to Friends of the Cross (Friends) for the restoration of an enormous Latin cross known as the

Bald Knob Cross. Believing that this grant violated the First Amendment's Establishment Clause (as applied to the states by the Fourteenth Amendment), Sherman filed suit in his capacity as an Illinois taxpayer under 42 U.S.C. § 1983, seeking declaratory and injunctive relief, as well as an order of mandamus commanding the Department to rescind the grant and to require Friends to repay the money. Sherman alleges that it was actually Illinois's General Assembly that "specifically selected" Friends for the receipt of this grant money, and on that basis he defends his right to pursue this case. The district court saw things differently and dismissed Sherman's suit for lack of Article III standing.

The district court correctly assessed Sherman's right to sue. Whatever may be lurking in the background of this appropriations legislation, the $20,000 grant to Friends was not the result of legislative action; rather, it can be traced at most to the initiative of a single legislator. The ultimate pool of $5 million was in the hands of an executive agency, which was formally responsible for the decision to hand out the $20,000 to Friends. Taxpayer standing under these circumstances is foreclosed by *Hein v. Freedom from Religious Foundation, Inc.*, 551 U.S. 587 (2007). We therefore affirm the judgment of the district court.

I

The Bald Knob Cross is a well-known tourist attraction in Alto Pass, Illinois. At 111 feet (or, for metric purists, 33.83 meters) tall, it claims to be "the largest cross in the

Western Hemisphere." (Apparently this takes into account the elevation of Alto Pass above sea level, which is about 757 feet.) Although we cannot vouch for the fact that it is indeed either the largest or tallest cross in the state, see Lisa Gray, *Church Wants 2 Giant Symbols to Bear Witness*, HOUS. CHRON., July 10, 2008, at A1, A4 (noting that the "Cross at the Crossroads" in Effingham, Illinois, is 198 feet tall), let alone the entire Western Hemisphere, see *id.* (listing crosses in St. Augustine, Florida, and Orlando, Florida, that are 208 feet tall and 199 feet tall, respectively), we do know that by 2008 it had fallen into a state of disrepair. In order to help restore the cross, the non-profit group Friends of the Cross was formed to organize fundraising activities and solicit donations.

On June 28, 2008, after applying for a share of the $5 million appropriation mentioned earlier, Friends secured from the Department a $20,000 grant for repairs to the cross. The grant money was transferred to Friends later that year. According to Sherman, it is currently being held in a certificate of deposit. Sherman alleges that Friends was "specifically selected by the General Assembly" for the grant, but nothing on the face of the bill identifies Friends and Sherman does not explain how he knows this. It is *amicus curiae* Americans United for Separation of Church and State (Americans United) that has provided the illuminating details. According to Americans United, under Illinois's "member initiatives program," the General Assembly annually passes a lump-sum appropriation intended to fund the pork-barrel projects of individual legislators. After the

appropriation is passed, caucus leaders decide how to distribute the money among individual members, who vie for funding for their local districts. Once these legislators receive their share of the appropriation, they function as "*de facto* legislatures" (or perhaps more accurately *de facto* executive agencies), each deciding for himself or herself which local projects to fund. The favored legislator then issues a directive to the Department, which is then supposed to distribute the grant monies as instructed. In reality, the general appropriation is a blunt "means of exerting political discipline and dispensing patronage." "For all practical purposes, the decisions of these four legislators [the caucus leaders] cannot be vetoed," Michael C. Herron & Brett A. Theodos, *Government Redistribution in the Shadow of Legislative Elections: A Study of the Illinois Member Initiative Grants Program*, 29 LEGIS. STUD. Q. 287, 288 (2004), and, accepting American United's allegations as true, the Department and the executive branch consider themselves bound by the imperatives of the individual legislators. Through this process, Illinois State Senator Gary Forby secured a $20,000 grant for Friends, which the Department dutifully disbursed.

Sherman, as we said, is an atheist and an Illinois resident and taxpayer. He discovered the grant to Friends while browsing the Department's website. Given the obvious religious character of the Bald Knob Cross, Sherman drew the conclusion that this state support of religious iconography violated the First Amendment's Establishment Clause. He therefore filed suit against various state defendants and Friends under 42 U.S.C.

§ 1983, alleging that the grant has the primary effect of advancing a particular religious sect and that it results in an excessive entanglement between the State and the Christian religion, in violation of the First and Fourteenth Amendments. Sherman's case was referred to Magistrate Judge David G. Bernthal, who ruled that Sherman lacked standing to sue and that his claim was moot. The District Court for the Central District of Illinois adopted Judge Bernthal's Report and Recommendation and dismissed Sherman's suit for lack of subject-matter jurisdiction. Sherman now appeals.

## II

We review the district court's decision to dismiss *de novo*. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). Even accepting, as we must, all of Sherman's factual allegations as true, *id.*, it is plain that Sherman cannot establish standing to sue based on his interest as a taxpayer of Illinois.

Sherman alleges that Friends was "specifically selected by the General Assembly" for the grant, but as we have just explained, this is not accurate as a formal matter. For a taxpayer to have standing to challenge a government expenditure as violating the Establishment Clause, the Supreme Court has required that the challenged action be "congressional action under the taxing and spending clause." *Flast v. Cohen*, 392 U.S. 83, 106 (1968). Recently, the Court limited the reach of this holding to suits against "specific congressional enactment[s]," expressly excluding "discretionary Executive Branch expenditures"

from taxpayer challenges in federal court. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 608-10 (2007) (Alito, J.); *Freedom from Religion Foundation v. Nicholson*, 536 F.3d 730, 738 n.11 (7th Cir. 2008) (noting that we regard Justice Alito's opinion as controlling). We see no reason not to apply these principles to state legislatures and executive officers, when the Establishment Clause applies by virtue of the Fourteenth Amendment.

Sherman's allegations do not fall within the narrow sliver of situations that survives *Hein*. Tellingly, Sherman points to no specific and binding legislative action directing that $20,000 be disbursed to Friends. It is not enough to say that Friends was "specifically selected" by the legislative leadership for the grant, as we see no room in the Supreme Court's decisions for the Realpolitik approach that Sherman urges. The complaint concedes that the General Assembly appropriated $5 million "to be used for grants administered by the [Department]" and then goes on simply to assert that Friends was specifically designated to receive money by the General Assembly. This assertion, however, is not tethered to any legislative text. Instead, Sherman wants us to fill the gap between the general lump-sum appropriation and the specific FOTC grant. But "standing cannot be inferred argumentatively from averments in the pleadings"; rather, it "must affirmatively appear in the record." *Spencer v. Kemna*, 523 U.S. 1, 10-11 (1998) (quotation marks omitted).

Even if we were free to range beyond the complaint, we would still be compelled by *Hein* to reject Sherman's

standing. A patronage-based process like the one apparently used in Illinois is a far cry from the type of "specific congressional appropriation" that is analogous to the challenged action in *Flast*. *Hein*, 551 U.S. at 603-04. *Cf. INS v. Chadha*, 462 U.S. 919, 944–59 (distinguishing between action of a single chamber of Congress and binding legislation passed by "a single, finely wrought and exhaustively considered, procedure"). After *Hein*, a taxpayer can challenge the latter, but not the former.

In addition to his claims against the various state defendants, Sherman also contends that Friends should be compelled to return the $20,000 it received for the restoration of the Bald Knob Cross. That too is out of the question. After *Hein*, we explicitly ruled that "[t]he only form of relief the taxpayers [have] standing to seek [is] an injunction against the . . . disbursement of the allegedly unconstitutional grant." *Laskowski v. Spellings*, 546 F.3d 822, 828 (7th Cir. 2008). Even if he did have standing, Sherman may seek only an injunction against the state prohibiting the allegedly unconstitutional disbursement, but it is too late for this relief. Illinois has already disbursed the $20,000 to Friends and Sherman has no right to insist that they pay it back.

Sherman suggests that *Laskowski* is distinguishable, but we are not persuaded. Relying on the Sixth Circuit's decision in *American Atheists v. City of Detroit*, 567 F.3d 278, 288 (6th Cir. 2009), he argues that he would lack standing only if the grant money had left Friends's hands, perhaps if it had already paid a contractor for cross restoration work. Because Friends still maintains con-

trol over the funds and is a party to this case, relief, he contends, is still available. We reject this distinction. In *American Atheists*, the complaining parties were municipality taxpayers and so the *Flast* requirements for standing were not implicated in the first place. *Id.* In addition, we are confident that the Supreme Court, post-*Hein,* has no intention of allowing a taxpayer to pursue a claim for restitution against a private recipient of public funds. That is what *Laskowski* said, 546 F.3d at 828, and we adhere to that position.

After *Hein*, Sherman does not have standing to challenge the Department's grant in the first instance, nor can he seek to compel Friends to return the disbursement. The district court correctly dismissed Sherman's complaint for lack of subject-matter jurisdiction, and so we AFFIRM.