**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 7, 2016[*]
Decided September 12, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 15-3352

| | |
|---|---|
| MATTHEW T. CULLEN, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12-1032 |
| MICHELLE R.B. SADDLER, et al., *Defendants-Appellees.* | Sue E. Myerscough, *Judge.* |

**O R D E R**

Matthew Cullen brought suit under 42 U.S.C. § 1983 contending that when he was incarcerated prison officials violated his First Amendment rights by requiring him to participate in a religious substance-abuse program. The district court granted summary judgment for Cullen and ordered the individual defendants to pay $350 in damages—the amount that Cullen had sought in his complaint. On appeal Cullen argues that the district court erred in dismissing claims against two state agencies,

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

denying his claim for injunctive relief, and awarding him only $350. We affirm because agencies are not "persons" under § 1983; Cullen, no longer in prison, lacks standing to enjoin the prison's program; and Cullen waited too long to enlarge his damages request.

Cullen pleaded guilty in October 2009 to aggravated driving under the influence of alcohol, and he was sentenced to three years' imprisonment. Prison officials told Cullen that he could earn up to six months of discretionary good-time credit by participating in a substance-abuse treatment program. Cullen wanted to participate in a treatment program (and have a shot at getting the good-time credits), but he balked once he learned that the only available program was based on the 12-step approach used by Alcoholics Anonymous. Cullen, who is agnostic, believes that this 12-step program burdens non-theists by requiring them to recognize the existence of a "higher power." Despite his reservations, Cullen enrolled in the course and completed it in May 2010. He didn't receive any credit for doing so, however, because prison officials suspended the practice of awarding discretionary good-time credit before Cullen finished treatment. He was released from prison in January 2011.

A year later Cullen sued the Illinois Department of Corrections, the Illinois Department of Human Services, administrators of those agencies, and prison staff. He contends that the defendants violated his First Amendment rights by requiring him to choose between forfeiting potential good-time credit and participating in religiously based substance-abuse treatment. Cullen asked the district court to award him $350 in damages and to enjoin the agencies from promoting any substance-abuse treatment programs based on the teachings of Alcoholics Anonymous.

The district court evaluated the legal sufficiency of these claims. It dismissed Cullen's claims against the state agencies because they were not "persons" subject to suit under § 1983 and sovereign immunity barred the claims. The district court also concluded that Cullen lacked standing for injunctive relief because he no longer was required to participate in any objectionable treatment, and taxpayer standing did not apply. But Cullen's claims for $350 in damages against the defendants sued in their individual capacities went forward.

After discovery closed the parties cross-moved for summary judgment, and the district court proceeded in two phases. First, on liability, the district court ruled for Cullen. It reasoned that his claims were indistinguishable from those brought by the prisoner in *Kerr v. Farrey*, 95 F.3d 472, 479–80 (7th Cir. 1996). In *Kerr,* we concluded that

prison officials violated an inmate's First Amendment rights by requiring him to attend Narcotics Anonymous meetings or risk adverse consequence to his security classification and parole eligibility. *Id.* Second, the district court considered damages. The defendants argued that, because Cullen had stated in his amended complaint and in five separate interrogatory responses that he sought only $350 in compensatory damages, damages were limited to that amount. Cullen replied, for the first time, that his relief should include punitive damages of over $2 million. The district court ruled that Cullen had introduced no evidence to justify more than $350 in compensatory damages and that granting his belated request to seek punitive damages would unfairly prejudice the defendants. The court awarded Cullen $350 in compensatory damages plus costs. No defendant has cross-appealed from that award.

In this court Cullen first challenges the district court's conclusion that the two agencies are entitled to sovereign immunity. But, as the district court properly observed, these state agencies are not "persons" amenable to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir.), *cert. denied*, 136 S. Ct. 321 (2015); *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2006). It would therefore be inappropriate for us to decide "whether the Constitution would prevent litigation that Congress has not authorized in the first place." *See Holton v. Indiana Horse Racing Comm'n*, 398 F.3d 928, 929 (7th Cir. 2005).

Next Cullen challenges the district court's conclusion that he lacks standing to pursue claims for injunctive relief. He argues that—despite his release from prison—officials at the Department of Human Services may cause him an "ongoing injury" based on the following scenario: If he applies for restricted driving privileges, one of the Department's providers of substance-abuse treatment may evaluate him; the provider may recommend treatment; and Cullen may seek treatment but may not find any secular providers nearby. To prevent this injury, Cullen argues, the department must require that "each and every" provider it licenses offer a secular program. But Cullen's fear of injury is too hypothetical to establish the immediate risk of future harm required for standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983); *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). Cullen hasn't yet applied for restricted driving privileges, and if he does in the future it is far from certain that he'll be ordered to participate in any substance abuse treatment, much less treatment that he finds objectionable.

Cullen also argues that as an Illinois taxpayer he has standing to seek an injunction. In rejecting that argument, the district court relied on *Hein v. Freedom from*

*Religion Foundation, Inc.*, which held that taxpayers lack standing to challenge a discretionary decision by the executive branch to use its general-purpose appropriated funds to promote religion. 551 U.S. 587, 602–08 (2007) (Alito, J., plurality opinion); *see Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 738 n.11 (7th Cir. 2008) (noting that we regard Justice Alito's opinion in *Hein* as controlling). Cullen argues that *Hein* was wrongly decided, but we are not at liberty to disregard Supreme Court precedents, and we are not inclined to revisit our cases interpreting *Hein*. Because no legislation *mandates* that the agencies promote religion in treatment programs, the district court correctly concluded that Cullen lacked taxpayer standing to challenge the agencies' actions. *See Sherman v. Illinois*, 682 F.3d 643, 644–47 (7th Cir. 2012) (concluding that taxpayer lacked standing to challenge the discretionary grant of funds from a state executive agency to a non-profit group seeking to restore a religious display); *Nicholson*, 536 F.3d at 735, 743–45 (holding that taxpayer lacked standing to challenge federal agency's discretionary expenditure that funded religious mental-health and substance-abuse treatment programs).

Finally, Cullen faults the district court for awarding him only $350 in damages. District courts generally should "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," *see* FED. R. CIV. P. 54(c), but they shouldn't award a plaintiff more relief than he's requested when doing so would unfairly prejudice the defendants. *See Albemarie Paper Co. v. Moody*, 422 U.S. 405, 424 (1975); *Felce v. Fiedler*, 974 F.2d 1484, 1501 (7th Cir. 1992). "In particular, a substantial increase in the defendant's potential ultimate liability can constitute specific prejudice barring additional relief under Rule 54(c)." *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 559 (7th Cir. 1986) (quoting *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712, 716–17 (4th Cir. 1983)). That has occurred here: Cullen pleaded in his amended complaint and swore under oath in five separate interrogatory responses that he sought only $350 in compensatory damages. Only *after* the parties had completed discovery, litigating this suit as a low-stakes dispute, and the district court had ruled against the defendants on liability did Cullen seek over $2 million in punitive damages—a more than 5,000-fold increase in requested relief. Because this belated, proposed amendment would have radically transformed the case, and Cullen offered no good reason for his delay, the district court did not abuse its discretion in refusing to allow it. *See Winters v. Fru-Con, Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (affirming denial of belated request to seek punitive damages that would affect "discovery and trial strategy"); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (same result when plaintiff offered no good cause for belated request); *cf. Atl. Purchasers, Inc.*, 705 F.2d at 716–17

(recognizing that defendant would be unfairly prejudiced if plaintiff were allowed to amend complaint after verdict to seek treble damages).

AFFIRMED.