# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60616

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2017

Lyle W. Cayce
Clerk

CARLOS E. MOORE,

      Plaintiff - Appellant

v.

GOVERNOR DEWEY PHILLIP BRYANT, In his Official Capacity,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

The upper, left-hand corner of the Mississippi state flag depicts the Confederate battle flag. Plaintiff-Appellant, an African-American, Mississippi lawyer, sued Defendant-Appellee, the Governor of Mississippi, claiming that the Mississippi flag violates his rights under the Equal Protection Clause of the Constitution. The district court sua sponte ordered the parties to brief standing and the political question doctrine. In response, Defendant moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff responded and additionally submitted a sworn declaration in support of his standing. Thereafter, Plaintiff moved to amend, seeking to file a Fourth Amended Complaint asserting an equal protection claim on behalf of his

No. 16-60616

daughter. The district court held a hearing on the motion to dismiss. At the hearing, the parties agreed that Plaintiff could testify about his alleged injuries and that his testimony would be accepted as true for the purposes of the motion to dismiss. The district court dismissed for lack of standing and denied the motion to amend because any amendment would be futile. We AFFIRM.[1]

## I

This Court reviews a dismissal for lack of standing de novo. *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). "It is well settled in this circuit that '[t]he district court . . . has the power to dismiss [pursuant to Rule 12(b)(1)] on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quoting *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir.1989)).[2] In this case, the district court decided the motion to dismiss based on undisputed facts, "[t]herefore, our review is limited to determining whether the district court's application of the law is correct and . . . whether those facts are indeed undisputed." *Id.*

The requirement that a litigant have standing derives from Article III of the Constitution, which confines federal courts to "adjudicating actual 'cases' and 'controversies.'" *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002) (quoting U.S. Const. art. III, § 2, cl. 1). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—

---

[1] Plaintiff raised additional standing theories before the district court including a Thirteenth Amendment claim and a claim that the Mississippi flag incited racial violence. He has abandoned those theories here.

[2] Dismissals for lack of Constitutional standing are granted pursuant to Rule 12(b)(1). *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

No. 16-60616

an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Id.* at 560 (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (internal quotation marks and citations omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted).

II

The district court found that Plaintiff failed adequately to plead injury in fact, the first element of standing. On appeal, Plaintiff puts forward three injury-in-fact theories. We find each unavailing.

1. Stigmatic Injury

Plaintiff first alleges that he is unavoidably exposed to the state flag and that the flag's message is "painful, threatening, and offensive" to him, makes him "feel like a second-class citizen," and causes him both physical and emotional injuries." At its core, Plaintiff's injury theory is that the Mississippi state flag stigmatizes him.

Stigmatic injury "accords a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct[.]" *Allen v. Wright*, 468 U.S. 737, 755 (1984) (quoting *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984)), *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Accordingly, to plead stigmatic-injury standing, Plaintiff must plead that he was personally subjected to discriminatory treatment. *See Carroll v. Nakatani*, 342 F.3d 934, 946 (9th Cir. 2003) ("Being subjected to a racial

3

classification differs materially from having personally been denied equal treatment . . . . [Plaintiff] does not cite, and we do not find, any authority supporting the proposition that racial classification alone amounts to a showing of individualized harm."); *see also Miller v. Albright*, 523 U.S. 420, 451 (1998) (O'Connor, J., concurring); *Binno v. Am. Bar Assoc.*, 826 F.3d 338, 351 (6th Cir. 2016); *Rainbow/PUSH Coal. v. F.C.C.*, 396 F.3d 1235, 1241 n.6 (D.C. Cir. 2005); *Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 596 (10th Cir. 1996); *Kurtz v. Baker*, 829 F.2d 1133, 1141 (D.C. Cir. 1987). He has not done so and thus, fails to plead injury.

Plaintiff resists this conclusion in three ways. First, drawing on Establishment Clause cases, which were not presented to the district court, Plaintiff argues that exposure to unavoidable and deleterious Government speech is sufficient to confer standing. Second, Plaintiff argues that *Allen* is factually inapplicable. Third, Plaintiff argues that if *Allen* applies, then symbolic, government, hate speech will be insulated from review. We disagree with each argument.

First, the Establishment Clause case law, though vital for its purpose and settled as doctrine, is inapplicable. In an Establishment Clause case, a plaintiff adequately alleges standing by alleging direct and unwelcome exposure to a religious display. *See Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 497 (5th Cir. 2007) (en banc) ("The question is whether there is proof in the record that Doe or his sons were exposed to, and may thus claim to have been injured by, invocations given at any Tangipahoa Parish School Board meeting."); *Murray v. City of Austin*, 947 F.2d 147, 151 (5th Cir. 1991); *see also Catholic League for Religious & Civil Rights v. City & Cty. of S.F.*, 624 F.3d 1043, 1072–73 (9th Cir. 2010) (en banc) (Graber, J., concurring in part, dissenting in part) (collecting cases). But *Allen* and its progeny make clear that those same types of injuries are not a basis for standing under the Equal

4

No. 16-60616

Protection Clause—that is, exposure to a discriminatory message, without a corresponding denial of equal treatment, is insufficient to plead injury in an equal protection case. *Allen*, 468 U.S. at 755. Indeed, other courts have rejected attempts to cross-pollinate Equal Protection Clause standing jurisprudence with Establishment Clause cases. *See, e.g., Nat'l Ass'n for the Advancement of Colored People v. Horne*, 626 F. App'x 200, 201 (9th Cir. 2015) (unpublished) ("Plaintiffs have not alleged that their members were personally denied equal treatment under *Allen*, as stigmatic injury caused by being a target of official discrimination is not itself a personal denial of equal treatment.").[3]

Plaintiff argues that the test for Equal Protection Clause standing must mirror the test for Establishment Clause standing because there is no "hierarchy of constitutional values" warranting a "sliding scale of standing." True enough, but standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). The reason that Equal Protection and Establishment Clause cases call for different injury-in-fact analyses is that the injuries protected against under the Clauses are different. The Establishment Clause prohibits the Government from endorsing a religion, and thus directly regulates Government speech if that speech endorses religion. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 468 (2009) ("[G]overnment speech must comport with the Establishment Clause."). Accordingly, Establishment Clause injury can occur when a person encounters the Government's endorsement of religion. *See Murray*, 947 F.2d at 151. The

---

[3] In *Horne*, the plaintiffs argued that Establishment Clause cases were relevant to show standing. *See* Br. for Appellants, *Nat'l Ass'n for the Advancement of Colored People v. Horne*, at 23 n.5, 626 F. App'x 200 (9th Cir. 2015) (No. 13-17247), 2014 WL 1153838 (arguing that Establishment Clause cases could demonstrate stigmatic injury standing in an equal protection case). Nonetheless, without citation to Establishment Clause cases, the Ninth Circuit straightforwardly applied *Allen*.

same is not true under the Equal Protection Clause: the gravamen of an equal protection claim is differential governmental treatment, not differential governmental messaging. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."); *Allen*, 468 U.S. at 757 n.22 ("The stigmatic injury thus requires identification of some concrete interest with respect to which respondents are personally subject to discriminatory treatment. That interest must independently satisfy the causation requirement of standing doctrine."); *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) (noting that an equal protection claim requires proof of unequal treatment).

Second, Plaintiff argues that *Allen* is inapplicable. On Plaintiff's reading, *Allen* does not apply because "the allegation here is that the State has itself acted with a discriminatory purpose in the design of its state flag, that Plaintiff is unavoidably, and frequently, and personally exposed to the state's demeaning and discriminatory message, and that it has impacted him personally in a variety of ways." However, Plaintiff's reading does not comport with *Allen*'s text or its subsequent interpretation. *Allen* held that when plaintiffs ground their equal protection injuries in stigmatic harm, they only have standing if they also allege discriminatory treatment. *Allen*, 468 U.S. at 755. That Plaintiff alleges that he personally and deeply feels the impact of Mississippi's state flag, however sincere those allegations are, is irrelevant to *Allen*'s standing analysis unless Plaintiff alleges discriminatory treatment.

6

No. 16-60616

*See, e.g.*, *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 822 (7th Cir. 2014) (holding that the *Allen* inquiry is unchanged when plaintiffs claimed to be part of small group facing discrimination); *In re U.S. Catholic Conference*, 885 F.2d 1020, 1026 (2d Cir. 1989) (finding that under *Allen* clergy do not have special standing status based on the sincerity of their beliefs); *Mehdi v. U.S. Postal Serv.*, 988 F. Supp. 721, 731 (S.D.N.Y. 1997) ("Plaintiffs in this case have not alleged a personal denial of equal treatment, and thus any claim that the Postal Service has denied the plaintiffs equal protection by refusing to put up the Muslim Crescent and Star must be dismissed for want of standing.").

Third, Plaintiff contends that if he does not have standing to challenge Mississippi's flag then no plaintiff would ever have standing to challenge discriminatory government speech.   Preliminarily, in cases where the Government engages in discriminatory speech, that speech likely will be coupled with discriminatory treatment.[4]   *See, e.g.*, *Allen*, 468 U.S. at 755 (distinguishing *Heckler* because there the stigmatic speech was coupled with discriminatory treatment).   In any event, "[t]he assumption that if [Plaintiff has] no standing to sue, no one would have standing, is not a reason to find standing."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 489 (1982) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974)).

2. Hostile Workplace and Physical Injury

Plaintiff next argues, in an analogy not presented to the district court, that he has standing because he encounters the flag in his work as a prosecutor and "[i]t is well established that the presence of a Confederate flag even in a place of private employment, and even less than continuously, can create or

---

[4] Moreover, discriminatory government speech would certainly be useful in proving a discriminatory treatment claim, because it loudly speaks to discriminatory purpose.

7

contribute to an actionable 'hostile work environment.'" He also contends that, as a result of his exposure to the Mississippi flag, he suffers various physical injuries.

Both arguments suffer the same defect as Plaintiff's stigmatic-injury claim. Plaintiff's exposure to the Mississippi flag in courtrooms where he practices and his alleged physical injuries resulting from that exposure demonstrate that he strongly feels the stigmatic harm flowing from the flag. *Allen* recognized that "[t]here can be no doubt that [stigma] is one of the most serious consequences of discriminatory government action . . . ." *Allen*, 468 U.S. at 755. Nonetheless, *Allen* found that stigma alone was insufficient to satisfy the injury-in-fact requirement. *Id.* Accordingly, under *Allen* and its progeny, stigmatic injury does not transform into injury in fact just because the source of the stigmatic injury is frequently confronted or the stigmatic harm is strongly, sincerely, and severely felt. *See, e.g.*, *Newdow v. Lefevre*, 598 F.3d 638, 643 (9th Cir. 2010) (applying *Allen* even when the Plaintiff argued that he personally suffered harm as a result of the Government's stigmatizing speech); *Harris v. United States*, 447 F. Supp. 2d 208, 212 (D. Conn. 2005) ("However, it is not the seriousness of the harm but its generality that determines whether a federal court is the proper forum for addressing it."). Moreover, analogizing Plaintiff's equal protection claim to a hostile work environment claim fails for the same reason that the Establishment Clause analogy fails: under Title VII, 42 U.S.C. § 2000e *et seq.*, exposure to a hostile work environment alone is the injury; under the Equal Protection Clause it is not. *Compare Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting that Title VII "is not limited to economic or tangible discrimination . . . [but also] includes requiring people to work in a discriminatorily hostile or abusive environment" (internal quotation marks and citations omitted)), *with Allen*, 468 U.S. at 755 (equal protection standing requires more than stigma alone).

No. 16-60616

Accordingly, we conclude that Plaintiff's hostile workplace and physical injury theories are insufficient to plead injury in fact.

    3. <u>Harm to Plaintiff's Daughter</u>

Last, Plaintiff alleges in his proposed Fourth Amended Complaint that his daughter is harmed by two Mississippi statutes, which require her to be exposed to the Mississippi flag in school. Section 37-13-5 requires that the Mississippi flag be flown in close proximity to all public schools and that "there shall be given a course of study concerning . . . the flag of the State of Mississippi. The course of study shall include the history of [the] flag and what [it] represent[s] and the proper respect therefor." Miss. Code § 37-13-5(1), (3). Section 37-13-7 requires that "[t]he pledge of allegiance to the Mississippi flag shall be taught in the public schools of this state[.]" Miss. Code § 37-13-7(2). Plaintiff does not allege that either statute has yet violated his daughter's rights; instead, he claims that when she begins school she will "be forced to learn, adopt, utter or communicate speech which she finds objectionable" in violation of the First Amendment.

The district court rejected this standing theory. It reasoned that Section 37-13-5 does not facially violate the Constitution because it merely requires "children to be taught about the history of the Mississippi flag" and that Section 37-13-7 does not facially violate the Constitution because it "does not require any student to recite the Mississippi pledge." Finding that Plaintiff failed to plead that either statute clearly risked violating his daughter's constitutional rights, the district court concluded that Plaintiff could not show injury. We agree.

The district court properly construed both Mississippi statutes. As always, statutory interpretation begins "with the plain language and structure of the statute." *Coserv Ltd. Liab. Corp. v. Sw. Bell Tel. Co.*, 350 F.3d 482, 486 (5th Cir. 2003). Section 37-13-5 requires that Mississippi students be "given

9

a course of study" concerning the Mississippi flag and be taught "proper respect" for the flag. Miss. Code § 37-13-5(3). Plaintiff argues that the statute mandates that his daughter be taught to "respect" the flag "no matter its origins, no matter the malicious intent of the State in adopting it, and no matter the destructive and demoralizing impact on young minds." We do not agree that the statute requires so much. Instead, the statute demands that children be taught "proper respect" for the flag. "Proper" means "correct" or "marked by suitability, rightness, or appropriateness." Merriam-Webster's Collegiate Dictionary 932 (10th ed. 2002). The words "correct" or "suitable" imply neither a positive nor a negative level of respect; under a plain reading of the statute all that is required to be taught is the history of the flag and the respect that it is due, whatever that may be. Likewise, Section 37-13-7 does not require that students pledge allegiance to the Mississippi flag. Instead, the statute only requires that the Mississippi pledge be taught in public schools, without mandating that schools teach a particular viewpoint about the pledge. *See* Miss. Code § 37-13-7(2). Accordingly, neither statute requires anything more than that students be taught about the flag and the pledge. The statutes do not facially violate the Constitution. *See, e.g.*, *Freiler v. Tangipahoa Par. Bd. of Educ.*, 185 F.3d 337, 342 (5th Cir. 1999) (absent constitutional violation, states "have the right to prescribe the academic curricula of their public school systems").

Because neither statute compels the violation of Plaintiff's daughter's rights, Plaintiff's claim boils down to an assertion that Mississippi could, but need not, apply its law in an unconstitutional way. This assertion is too speculative to support standing. *See, e.g.*, *Henderson*, 287 F.3d at 380 (finding that plaintiffs did not have standing to bring a facial challenge when plaintiffs' alleged injury was that a newly created state council might violate the Establishment Clause).

No. 16-60616

III

We agree with the district court that Plaintiff failed adequately to plead injury in fact and therefore failed to establish standing. *See Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc) ("If any one of these three elements . . . is absent, plaintiffs have no standing in federal court[.]"). Accordingly, we need not reach causation, redressability, or the political question doctrine.

AFFIRMED.

11