# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60477

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2017

Lyle W. Cayce
Clerk

RIMS BARBER; CAROL BURNETT; JOAN BAILEY;
KATHERINE ELIZABETH DAY; ANTHONY LAINE BOYETTE;
DON FORTENBERRY; SUSAN GLISSON; DERRICK JOHNSON;
DOROTHY C. TRIPLETT; RENICK TAYLOR;
BRANDILYNE MANGUM-DEAR; SUSAN MANGUM;
JOSHUA GENERATION METROPOLITAN COMMUNITY CHURCH,

Plaintiffs–Appellees,

versus

GOVERNOR PHIL BRYANT, State of Mississippi;
JOHN DAVIS,
    Executive Director of the Mississippi Department of Human Services,

Defendants–Appellants.

\* \* \* \* \* \* \* \* \*

No. 16-60478

CAMPAIGN FOR SOUTHERN EQUALITY;
THE REVEREND DOCTOR SUSAN HROSTOWSKI,

Plaintiffs–Appellees,

versus

PHIL BRYANT,
  in His Official Capacity as Governor of the State of Mississippi;
JOHN DAVIS, in His Official Capacity as
  Executive Director of the Mississippi Department of Human Services,

Defendants–Appellants.

Appeals from the United States District Court
for the Southern District of Mississippi

No. 16-60477
No. 16-60478

Before SMITH, ELROD, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The Governor of Mississippi and the Executive Director of the Mississippi Department of Human Services appeal a preliminary injunction. Because the plaintiffs do not have standing, we reverse the injunction and render a judgment of dismissal.

## I.

## A.

The plaintiffs challenge the constitutionality of a Mississippi statute, HB 1523, under the Establishment Clause and the Equal Protection Clause of the Fourteenth Amendment. HB 1523 provides that "[t]he state government shall not take any discriminatory action"[1] against persons who act in accordance with certain beliefs in an enumerated set of circumstances. Section 2 of HB 1523 identifies three "religious beliefs or moral convictions":

> (a) Marriage is or should be recognized as the union of one man and one woman; (b) [s]exual relations are properly reserved to such a marriage; and (c) [m]ale (man) or female (woman) refer[s] to an individual's immutable biological sex as objectively determined by anatomy and genetics at time of birth.

2016 Miss. Law HB 1523 § 2. Those who act in accordance with those beliefs are protected from discriminatory action by the state in the form of adverse tax, benefit, and employment decisions, the imposition of fines, and the denial of occupational licenses. HB 1523 § 4. The statute creates a private right of action for individuals to address any violations of HB 1523 by state officials and permits its use as a defense in private suits over conduct covered by the statute. HB 1523 § 5.

---

[1] *E.g.*, HB 1523 § 3(1).

No. 16-60477
No. 16-60478

Section 3 defines the set of circumstances in which adverse state action is restricted. Religious organizations are protected when they make decisions regarding employment, housing, the placement of children in foster or adoptive homes, or the solemnization of a marriage based on a belief listed in Section 2. HB 1523 § 3(1)–(2). Parents are protected if they decide to raise their foster or adoptive children in accordance with a belief listed in Section 2. HB 1523 § 3(3). Doctors and mental health counselors cannot be compelled to provide services in contravention of a sincerely held Section 2 belief, provided it does not interfere with "visitation, recognition of a designated representative for health care decision-making, or emergency medical treatment necessary to cure an illness or injury as required by law." HB 1523 § 3(4). Businesses that offer wedding-related services are protected if they decline to provide them on the basis of a Section 2 belief. HB 1523 § 3(5).

Section 3 also protects any entity that establishes sex-specific standards for facilities such as locker rooms or restrooms. HB 1523 § 3(6). The state cannot take adverse employment action against a state employee for Section 2-related speech as long as his "speech or expressive conduct is consistent with the time, place, manner and frequency of any other expression of a religious, political, or moral belief or conviction allowed . . . ." HB 1523 § 3(7). Finally, county clerks and state judges cannot be compelled to license or celebrate marriages that are inconsistent with a sincerely held Section 2 belief, provided that the official gives prior notice and "any legally valid marriage is not impeded or delayed as a result of any recusal." HB 1523 § 3(8).

## B.

The plaintiffs are residents of Mississippi and two organizations who do not share the Section 2 beliefs. The district court discussed the individual

3

No. 16-60477
No. 16-60478

plaintiffs in three categories: (1) religious leaders who do not agree with the Section 2 beliefs, (2) gay and transgender persons who may be negatively affected by HB 1523, and (3) other persons associated with the Section 3 circumstances who do not share the Section 2 beliefs. The organizational plaintiffs are Joshua Generation Metropolitan Community Church, a religious organization that objects to the Section 2 beliefs, and the Campaign for Southern Equality ("CSE"), whose brief describes it as "a non-profit organization that works across the South to promote the full humanity and equality of lesbian, gay, bisexual, and transgender people in American life" (internal quotation marks omitted).

The plaintiffs filed two suits, later consolidated, against state officials who would have a role in the implementation of HB 1523. Plaintiffs assert they are injured by the "clear message" sent by HB 1523 that the "state government disapproves of and is hostile to same-sex couples, to unmarried people who engage in sexual relations, and to transgender people." They maintain that that message violates the Establishment Clause because it endorses specific religious beliefs and that it violates the Equal Protection Clause of the Fourteenth Amendment[2] because it provides different protections for Mississippians based on those beliefs.

The district court issued a preliminary injunction against the implementation of HB 1523. The state defendants appeal.

## II.

Article III limits federal courts to deciding only actual "Cases" or "Controversies." U.S. CONST. art. III, § 2. "As an incident to the elaboration of" the

---

[2] The plaintiffs in No. 16-60478—CSE and Susan Hrostowski—do not bring an equal-protection challenge.

4

No. 16-60477
No. 16-60478

case-or-controversy requirement, "[we have] always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). The Judicial Branch may not "accept for adjudication claims of constitutional violation . . . where the claimant has not suffered cognizable injury." *Id.* at 474.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Id.* (internal quotation marks and citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (internal quotation marks and citations omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted).

Plaintiffs always have the burden to establish standing. *Id.* "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Id.* Because a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," the plaintiffs must make a "clear showing" that they have standing to maintain the preliminary injunction.[3] None of these

---

[3] *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Townley v. Miller*,

No. 16-60477
No. 16-60478

plaintiffs has clearly shown an injury-in-fact, so none has standing. It follows that "[w]e do not—indeed, we may not—reach the merits of the parties' [constitutional] arguments." *Hotze v. Burwell*, 784 F.3d 984, 991 (5th Cir. 2015).

III.

A.

The Establishment Clause is no exception to the requirement of standing. *Valley Forge*, 454 U.S. at 484. "It is not enough simply to argue that there has been some violation of the Establishment Clause; [the plaintiffs] must allege a personal violation of rights." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009). The plaintiffs claim they have suffered a stigmatic injury from the statute's endorsement of the Section 2 beliefs. That stigma can be a cognizable Establishment Clause injury, but even such stigmatic injury must be concrete and particularized. *See, e.g., Murray v. City of Austin,* 947 F.2d 147, 151 (5th Cir. 1991).

"[T]he concept of injury for standing purposes is particularly elusive in Establishment Clause cases," but we are not without guidance. *Id.* (quoting *Saladin v. City of Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987)). In cases involving religious displays and exercises, we have required an encounter with the offending item or action to confer standing. *See id.*; *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 497 (5th Cir. 2007) (en banc) (addressing religious invocations). But these religious display and exercise cases represent the outer limits of where we can find these otherwise elusive Establishment Clause injuries.[4] Where a statute or government policy is at issue, the policy must

---

722 F.3d 1128, 1133 (9th Cir. 2013) ("At the preliminary injunction stage, plaintiffs must make a clear showing of each element of standing.").

[4] *See Chaplaincy of Full Gospel Churches v. U.S. Navy (In re Navy Chaplaincy),*

No. 16-60477
No. 16-60478

have some concrete applicability to the plaintiff. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 294 n.31 (5th Cir. 2001). Taxpayers have standing for the limited purpose of challenging a direct spending program that implicates the restrictions of the Establishment Clause. *Flast v. Cohen*, 392 U.S. 83, 102–03 (1968).

The plaintiffs analogize their purported stigmatic injury to the injuries in the religious-display and religious-exercise cases. Here, however, there is not a similar item or event to "encounter." That does not excuse the plaintiffs from showing an injury in fact that is *both* "concrete *and* particularized."[5] To determine whether they have made such a showing, we must examine their alleged injury in light of our caselaw. Because the challengers have failed to provide sufficient evidence of an injury-in-fact from HB 1523 under any of the aforementioned categories, they have not made a clear showing of standing.

B.

A plaintiff has standing to challenge a religious display where his stigmatic injury results from a "personal[ ] confront[ation]" with the display. *See Murray*, 947 F.2d at 150–51. For comparison, the caselaw offers some examples of such a confrontation. There is standing where a plaintiff personally encounters a religious symbol on his public utility bill. *Id.* at 150. Personally

---

534 F.3d 756, 764–65 (D.C. Cir. 2008) ("When plaintiffs are not themselves affected by a government action except through their abstract offense at the message allegedly conveyed by that action, they have not shown injury-in-fact to bring an Establishment Clause claim, at least outside the distinct context of the religious display and prayer cases." (emphasis omitted)).

[5] *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). The religious-display and religious-exercise cases are also an imperfect analogy because HB 1523 covers those who hold a Section 2 belief on either a religious or a secular basis, and beliefs are not defined in reference to any particular religious denomination. HB 1523 § 2 ("The sincerely held religious beliefs or moral conviction protected by this act are . . . .").

No. 16-60477
No. 16-60478

encountering a religious message on the currency a plaintiff regularly handles is also sufficient.[6]  But once that display is removed from view, standing dissipates because there is no longer an injury.  *See Staley v. Harris Cty.*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc).  The personal confrontation must also occur in the course of a plaintiff's regular activities; it cannot be manufactured for the purpose of litigation.  *ACLU-NJ v. Twp. of Wall*, 246 F.3d 258, 266 (3d Cir. 2001).

The plaintiffs maintain that the stigmatic injury caused by Section 2 is analogous to the injury-in-fact in the religious-display cases.  But they make no clear showing of a personal confrontation with Section 2:  The beliefs listed in that section exist only in the statute itself.

Just as an individual cannot "personally confront" a warehoused monument, he cannot confront statutory text.  *See Staley*, 485 F.3d at 309.  Allowing standing on that basis would be indistinguishable from allowing standing based on a "generalized interest of all citizens in" the government's complying with the Establishment Clause without an injury-in-fact.  *See Valley Forge*, 454 U.S. at 483.  That, we know, "cannot alone satisfy the requirements of Art. III without draining those requirements of meaning."  *Id.*  The religious-display cases do not provide a basis for standing to challenge the endorsement of beliefs that exist only in the text of a statute.[7]

---

[6] *Newdow v. Lefevre*, 598 F.3d 638, 642–43 (9th Cir. 2010) (finding standing for the plaintiff to challenge the placement of the national motto "In God We Trust" on the currency).

[7] "To be sure, we recognize that plaintiffs' creative analogy to the religious display and prayer cases has some surface logic.  But the implications of plaintiffs' theory for standing doctrine are quite radical:  Plaintiffs seek to use the religious display and prayer cases to wedge open the courthouse doors to a wide range of plaintiffs alleging Establishment Clause violations who were previously barred by bedrock standing requirements—requirements that

No. 16-60477
No. 16-60478

## C.

For standing, the religious-exercise cases require the same type of personal confrontation. "Standing to challenge invocations as violating the Establishment Clause" cannot be based "solely on injury arising from mere abstract knowledge that invocations were said." *Tangipahoa Par.*, 494 F.3d at 497. There must be "proof in the record that [the plaintiffs] were exposed to, and may thus claim to have been injured by, invocations given at" the relevant event. *Id.*

At oral argument, the plaintiffs asserted that *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), a religious-exercise case, was the strongest authority supporting their claim that a stigmatic injury is sufficient for Establishment Clause standing.[8] In *Santa Fe, id.* at 309–10, 314, the Court used broad language to describe the injury non-adherents may suffer from witnessing a prayer at a school football game and the ability of the plaintiffs to bring a facial challenge to that policy. But *Santa Fe* does not address the standing of the instant plaintiffs, and its broad language does not eliminate the injury-in-fact requirement. In fact, we are bound by *Tangipahoa Parish*, 494 F.3d at 497, to require proof of a personal confrontation with the religious exercise. Neither the religious-exercise cases generally, nor *Santa Fe* specifically, provides support for these plaintiffs' standing.

## D.

Alternatively, the plaintiffs could establish injury-in-fact by clearly

---

are essential to preserving the separation of powers and limited judicial role mandated by the Constitution." *In re Navy Chaplaincy*, 534 F.3d at 765.

[8] At oral argument, the challengers also pointed to *Bowen v. Kendrick*, 487 U.S. 589, 600–01 (1988). But the only discussion of standing there is in regard to *Flast* taxpayer standing; here, the brief cites only the section of *Kendrick* on facial challenges. *Id.* at 600–01, 618.

No. 16-60477
No. 16-60478

showing they are injured by a legal effect of HB 1523. *See Littlefield*, 268 F.3d at 294 n.31. Instead, they rely solely on Section 2's alleged endorsement of specific beliefs. Standing is not available to just any resident of a jurisdiction to challenge a government message without a corresponding action about a particular belief outside the context of a religious display or exercise. *See In re Navy Chaplaincy*, 534 F.3d at 765.

In *Littlefield*, the plaintiffs challenged a public school district's uniform policy on, *inter alia*, Establishment Clause grounds. They contended that the policy's opt-out for those with religious objections to the dress code impermissibly "favor[ed] certain organized religions . . . ." *Littlefield*, 268 F.3d at 294 n.31. Their "direct exposure to the policy satisfie[d] the 'intangible injury' requirement to bring an Establishment Clause challenge." *Id.* Unlike the instant plaintiffs, the *Littlefield* plaintiffs were required to conform to the dress code unless they fit the criteria of the opt-out. But HB 1523 does nothing to compel the behavior of these plaintiffs; it only restricts the actions of state government officials.

The decisions in *Awad v. Zirax*, 670 F.3d 1111, 1120–24 (10th Cir. 2012), and *International Refugee Assistance Project v. Trump*, 857 F.3d 554, 583 (4th Cir. 2017), are similarly unavailing. The plaintiff in *Awad* had standing to challenge an amendment to the Oklahoma Constitution that forbade state courts from considering Sharia law. *Awad*, 670 F.3d at 1123–24. But he had alleged that the amendment would prevent the Oklahoma courts from probating his will. *Id.* at 1119. The plaintiff in *International Refugee* alleged that his wife, who had an approved visa application, was barred by an Executive Order from entering the United States, thus "prolong[ing] their separation." *Int'l Refugee*, 857 F.3d at 583. Those are the sort of concrete injuries-in-fact that

10

No. 16-60477
No. 16-60478

the plaintiffs have not alleged in this case.[9]

It is true that HB 1523 protects Section 2 beliefs by restricting the ability of state officials to take action against those who act in a Section 3 circumstance in accordance with those beliefs. But there is no evidence in the record of an injury-in-fact under this theory. The plaintiffs' affidavits only allege offense at the message Section 2 sends, and they confirmed at oral argument that they are relying on that purported stigmatic injury for standing. Because they have claimed no Establishment Clause injury from Section 3, we do not decide whether there could be standing on that basis. The plaintiffs have not clearly shown injury-in-fact.

E.

The CSE plaintiffs also claim to have *taxpayer* standing under *Flast*. "[T]o establish taxpayer standing to challenge the constitutionality of a state statute on the basis of the Establishment Clause, a party must show that 'tax revenues are expended on the disputed practice.'"[10] A plaintiff must make "the showing of a direct expenditure of income tax revenues on the allegedly unconstitutional program."[11] *Flast* only permitted taxpayer standing to challenge programs enacted under the Taxing and Spending Clause that involved more

---

[9] The Ninth Circuit found standing for a group of Catholic San Francisco residents to challenge a non-binding resolution by the Board of Supervisors condemning their beliefs regarding adoption. *See Catholic League for Religious & Civil Rights v. City & Cty. of S.F.*, 624 F.3d 1043, 1052–53 (9th Cir. 2010) (en banc). But that case is distinguishable on its own terms as a "direct attack and disparagement of their religion" "[u]nlike" other standing cases in which the religious effects were ancillary. *Id.* at 1050 n.26. Because HB 1523 is not a specific condemnation of an identified religion challenged by its adherents, the standing analysis in *Catholic League* is inapposite.

[10] *Henderson v. Stalder*, 287 F.3d 374, 380–81 (5th Cir. 2002) (quoting *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 408 (5th Cir. 1995)).

[11] *Id.* at 381 n.7 (citing *Flast*, 392 U.S. at 88).

No. 16-60477

No. 16-60478

than "an incidental expenditure of tax funds in the administration of an essentially regulatory statute." *See Flast*, 392 U.S. at 102. The Court considered that test consistent with its test for state taxpayer standing on federal questions.[12] The applicability of *Flast* to state taxpayers' federal constitutional claims was affirmed in *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 138 (2011).[13]

HB 1523 does not fall within *Flast*'s "'narrow exception' to 'the general rule against taxpayer standing.'"[14] The only spending HB 1523 authorizes is compensatory damages and attorneys' fees against state officials who engage in prohibited discriminatory conduct. Those hypothetical expenditures that may arise from lawsuits against state officials are "incidental" to the overall statutory scheme. *See Flast*, 392 U.S. at 102. The expenditures do not resemble the kind of direct spending program that, if enacted by Congress, would be based on the taxing and spending power. The plaintiffs do not have taxpayer standing to challenge HB 1523.

IV.

A.

The Barber plaintiffs claim standing under the Equal Protection Clause. The three elements of Article III standing are the same under any clause of the Constitution, but the analysis "often turns on the nature and source of the

---

[12] *Flast*, 392 U.S. at 102 (citing *Doremus v. Bd. of Educ.*, 342 U.S. 429, 434–35 (1952)). In *Doremus*, 342 U.S. at 434–35, the Court held that there was no taxpayer standing under the Establishment Clause to challenge a state statute requiring daily readings from the Old Testament in public schools because it was "not a direct dollars-and-cents injury."

[13] The Court in *Arizona Christian*, 563 U.S. at 142–43, applied *Flast* in holding that a tax credit that benefited religious schools was not a state expenditure, so the taxpayers did not have standing to challenge it under the Establishment Clause.

[14] *Id.* at 138 (quoting *Kendrick*, 487 U.S. at 618).

No. 16-60477
No. 16-60478

claim asserted." *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017). The "Equal Protection and Establishment Clause cases call for different injury-in-fact analyses" because "the injuries protected against under the Clauses are different." *Id.* "[E]xposure to a discriminatory message, without a corresponding denial of equal treatment, is insufficient to plead injury in an equal protection case." *Id.*

*In Moore*, we rejected a claim that the inclusion of the Confederate battle flag on the Mississippi state flag conferred standing under the Equal Protection Clause, reasoning that the plaintiff had not alleged any unequal treatment. *Id.* at 248. "[W]hen plaintiffs ground their equal protection injuries in stigmatic harm, they only have standing if they also allege discriminatory treatment." *Id.* at 251 (citing *Allen v. Wright*, 468 U.S. 737, 755 (1984)). This allegation is required regardless of how "personally and deeply [the plaintiffs] feel[ ] the impact of" the state's message. *Id.* [15]

Future injuries can provide the basis for standing, but they "must be *certainly impending* to constitute injury in fact," and "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting another source). An injury that is based on a "speculative chain of possibilities" does not confer Article III standing. *Id.* at 1150; *see also Allen*, 468 U.S. at 756–59. Such allegations also must be contained in the record. *See, e.g.*, *Tangipahoa Par.*, 494 F.3d at 499.

The Barber plaintiffs claim that their stigmatic injury arises from the

---

[15] The recent decision in *Sessions v. Morales-Santana*, No. 15-1191, 2017 U.S. LEXIS 3724 (U.S. June 12, 2017), does not alter this requirement. Morales-Santana raised an allegation of disparate treatment regarding the legal ability of his father "to pass citizenship to his son . . . ." *Id.* at *3. Third-party standing enabled him to bring that claim on his father's behalf as a means of avoiding removal. *Id.* at *15–16.

No. 16-60477
No. 16-60478

statute's "bestowing legal privileges and immunities on those who would dis-criminate against members of the targeted groups . . . ."  But their affidavits only claim offense at the "clear message" of disapproval that is being sent by the state.  In *Moore*, 853 F.3d at 251, this court has already foreclosed that argument for Equal Protection Clause standing.  The affidavits contain no statement that any of the plaintiffs plans to engage in a course of conduct in Mississippi that is identified in Section 3.

Plaintiff Rennick Taylor comes the closest by stating his intention to marry, but that alone is insufficient.  He does not allege that he was seeking wedding-related services from a business that would deny him or that he was seeking a marriage license or solemnization from a clerk or judge who would refuse to be involved in such a ceremony, or even that he intended to get mar-ried in Mississippi.  Without more, we are left to speculate as to the injuries he and the other plaintiffs might suffer.  That we cannot do.  *See Clapper*, 133 S. Ct. at 1147.  On this record, the plaintiffs are in no better position to claim Equal Protection standing than was the plaintiff in *Moore*.

B.

The Barber plaintiffs assert that some of the individual plaintiffs have Equal Protection standing because they live in a jurisdiction, or work for a state university, that has an anti-discrimination policy that is preempted by HB 1523 to the extent the relevant action is covered by Sections 2 and 3.  The cities of Jackson, Hattiesburg, and Oxford and the University of Southern Mississippi have such policies.

The Barber challengers analogize the partial preemption of the local anti-discrimination policies to the Colorado constitutional amendment struck down on equal-protection grounds in *Romer v. Evans*, 517 U.S. 620, 623–24

14

No. 16-60477
No. 16-60478

(1996). That amendment "prohibit[ed] all legislative, executive, or judicial action at any level of state or local government designed to protect" individuals on the basis of sexual orientation. *Id.* at 624. The Court held this violated the Equal Protection Clause because "[i]t identifies persons by a single trait and then denies them protection across the board." *Id.* at 633. HB 1523 is similar to the Colorado amendment in that it restricts the availability of anti-discrimination remedies, but it does so only in a defined set of circumstances.

The Court did not address standing in *Evans*, and we are not bound to find standing in a similar circumstance in the absence of such a holding. *See Tangipahoa Par.*, 494 F.3d at 498. Even assuming there was standing in *Evans*, its reasoning does not extend to HB 1523, because its limited scope does not provide the same certainty that any member of an affected group will suffer an injury. HB 1523 preempts the local anti-discrimination policies only in the circumstances enumerated in Section 3. At a minimum, the challengers would have to allege plans to engage in Section 3-related conduct in Mississippi for which they would be subject to a denial of service and would be stripped of a preexisting remedy for that denial.[16] The failure of the Barber plaintiffs to assert anything more than a general stigmatic injury dooms their claim to standing under this theory as well.

## V.

"The exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is . . . restricted to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." *Valley Forge*, 454 U.S. at 473. Under this current record,

---

[16] We do not speculate on whether, even with those allegations, the injury would be too attenuated to satisfy the standing requirements. *See Amnesty Int'l*, 133 S. Ct. at 1150.

No. 16-60477
No. 16-60478

the plaintiffs have not shown an injury-in-fact caused by HB 1523 that would empower the district court or this court to rule on its constitutionality. We do not foreclose the possibility that a future plaintiff may be able to show clear injury-in-fact that satisfies the "irreducible constitutional minimum of standing," *Defenders of Wildlife,* 504 U.S. at 560, but the federal courts must withhold judgment unless and until that plaintiff comes forward.

The preliminary injunction is REVERSED, and a judgment of dismissal for want of jurisdiction is RENDERED.