# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60477

United States Court of Appeals
Fifth Circuit

**FILED**
September 29, 2017

Lyle W. Cayce
Clerk

RIMS BARBER; CAROL BURNETT; JOAN BAILEY;
KATHERINE ELIZABETH DAY; ANTHONY LAINE BOYETTE;
DON FORTENBERRY; SUSAN GLISSON; DERRICK JOHNSON;
DOROTHY C. TRIPLETT; RENICK TAYLOR;
BRANDILYNE MANGUM-DEAR; SUSAN MANGUM;
JOSHUA GENERATION METROPOLITAN COMMUNITY CHURCH,

Plaintiffs–Appellees,

versus

GOVERNOR PHIL BRYANT, State of Mississippi;
JOHN DAVIS,
   Executive Director of the Mississippi Department of Human Services,

Defendants–Appellants.

\* \* \* \* \* \* \* \* \*

No. 16-60478

CAMPAIGN FOR SOUTHERN EQUALITY;
THE REVEREND DOCTOR SUSAN HROSTOWSKI,

Plaintiffs–Appellees,

versus

PHIL BRYANT,
  in His Official Capacity as Governor of the State of Mississippi;
JOHN DAVIS, in His Official Capacity as
   Executive Director of the Mississippi Department of Human Services,

Defendants–Appellants.

Appeals from the United States District Court
for the Southern District of Mississippi

ON PETITION FOR REHEARING EN BANC

(Opinion 860 F.3d 345, Jun. 22, 2017)

Before SMITH, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:

Treating the petitions for rehearing en banc as petitions for panel rehearing, the petitions for panel rehearing are DENIED. The court having been polled at the request of a member of the court, and a majority of the judges who are in regular active service not having voted in favor (FED. R. APP. P. 35 and 5TH CIR. R. 35), the petitions for rehearing en banc are DENIED.

In the poll, 2 judges vote in favor of rehearing en banc, and 12 vote against. Voting in favor are Judges Dennis and Graves. Voting against are Chief Judge Stewart and Judges Jolly, Jones, Smith, Clement, Prado, Owen, Elrod, Southwick, Haynes, Higginson, and Costa.

ENTERED FOR THE COURT:


    /s/  Jerry E. Smith
United States Circuit Judge

JAMES L. DENNIS, Circuit Judge, joined by GRAVES, Circuit Judge, dissenting from the denial of rehearing en banc:

I respectfully dissent from the court's refusal to consider en banc the important standing issue in this case. In my view, the panel opinion committed serious error in concluding that the plaintiffs lack standing to bring suit under the Establishment Clause. The plaintiffs argue that HB 1523, a Mississippi statute, violates the Establishment Clause—they allege that it endorses and favors certain religious beliefs because it grants special privileges and immunities to persons who sincerely hold at least one of the following "religious beliefs or moral convictions":

> (a) [m]arriage is or should be recognized as the union of one man and one woman; (b) [s]exual relations are properly reserved to such a marriage; and (c) [m]ale (man) or female (woman) refer[s] to an individual's immutable biological sex as objectively determined by anatomy and genetics at time of birth.

MISS. LAWS 2016, HB 1523 § 2.[1]

The plaintiffs are Mississippi residents and organizations who do not hold these beliefs or who hold religious beliefs contrary to these beliefs.[2] The plaintiffs allege that HB 1523 is an unconstitutional state endorsement of religious beliefs because it sends a message to non-adherents to those beliefs "that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members

---

[1] HB 1523 grants adherents to these beliefs immunity from sanctions for a range of anti-LGBT discrimination including withholding foster care services, § 3(2); psychological or counseling services, §3(4); marriage-related public accommodations, §3(5); and public accommodations and health and mental health services for transgender individuals, §3(4), (6). It also permits state employees to recuse themselves from serving same-sex couples seeking marriage licenses and ceremonies. § 3(8).

[2] Among these plaintiffs are gay and transgender individuals, same-sex married couples, and an unmarried individual in a relationship that includes sexual relations.

of the political community." *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 309 (2000) (cleaned up).

The panel opinion, *Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017), concludes that all of the plaintiffs lack standing to bring any challenge to HB 1523. *Id.* at 350–51. Respectfully, the panel opinion is wrong; the plaintiffs have standing to challenge HB 1523 under Supreme Court and Courts of Appeals precedents. The panel opinion misconstrues and misapplies the Establishment Clause precedent, and, as explained below, its analysis creates a conflict between our circuit and our sister circuits on the issue of Establishment Clause standing.

Critically, this case does not involve a challenge to a religious display or religious exercise—that is, a particular religious practice—endorsed by a government actor. In cases involving challenges to religious exercises or displays, courts have generally required some sort of physical exposure to the challenged object or conduct. Instead, the plaintiffs in this case challenge a law of their state. In cases involving challenges to laws or official policies in the plaintiffs' own communities, the stigmatic harm suffered by non-adherents is sufficient to establish an injury-in-fact. Because the plaintiffs in this case have alleged such a stigmatic harm, the panel opinion's dismissal of this case is in error and should have been reversed by the court en banc.

## I

For purposes of an Establishment Clause claim, "plaintiffs may demonstrate standing based on the direct harm of what is claimed to be an establishment of religion." *Establishment Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129 (2011). Such "direct harm" can, of course, include tangible and economic injuries. But because injury can be "particularly elusive" in this context, *Murray v. City of Austin*, 947 F.2d 147, 151 (5th Cir.

4

1991), "the standing inquiry in Establishment Clause cases has been tailored to reflect the kind of injuries Establishment Clause plaintiffs are likely to suffer," *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 294 n.31 (5th Cir. 2001) (cleaned up). Thus, "our rules of standing recognize that noneconomic or intangible injury may suffice to make an Establishment Clause claim justiciable." *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 505 (5th Cir. 2007) (cleaned up).

In *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), the Supreme Court held that "school sponsorship of a religious message is impermissible because it sends the ancillary message to members of the audience who are non-adherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Id.* at 309–10 (cleaned up). In that case, current and former students of a high school challenged the school's policy that permitted prayer initiated and led by a student at football games. *Id.* at 294. The school district contended that the plaintiffs' facial challenge to the policy was premature because, at the time the case was pending before the Supreme Court, no religious invocation had been made under the latest version of the school's policy. *See id.* at 313. Rejecting this argument, the Court observed:

> This argument, however, assumes that we are concerned only with the serious constitutional injury that occurs when a student is forced to participate in an act of religious worship because she chooses to attend a school event. But the Constitution also requires that we keep in mind the myriad, subtle ways in which Establishment Clause values can be eroded, and that we guard against other different, yet equally important, constitutional injuries. *One is the mere passage by the District of a policy that has the purpose and perception of government establishment of religion.*

*Id.* at 313–14 (cleaned up) (emphasis added).

The panel opinion in this case states, "the Court [in *Santa Fe*] used broad language to describe the injury non-adherents may suffer from witnessing a prayer at a school football game." *Barber*, 860 F.3d at 354. This assertion is plainly incorrect; the Court in *Santa Fe* described the injury the non-adherent plaintiffs in that case actually suffered from the "mere passage by the [school d]istrict of a policy that has the purpose and perception of government establishment of religion." 530 U.S. at 314. The panel opinion further states, "*Santa Fe* does not address the standing of the instant plaintiffs." *Barber*, 860 F.3d at 354. While it is true that the Court in *Santa Fe* was not responding to a challenge to the plaintiffs' standing per se, its explication of the relevant constitutional injuries against which the Establishment Clause guards is highly relevant to the question of what constitutes injury-in-fact for standing purposes in an Establishment Clause case. *See Littlefield*, 268 F.3d at 294 n.31 ("The standing inquiry in Establishment Clause cases has been tailored to reflect the kind of injuries Establishment Clause plaintiffs are likely to suffer." (Cleaned up)). It is also highly instructive that the Court did not perceive any standing problem under the circumstances of *Santa Fe*, which are similar to the facts of the instant case. *See Murray*, 947 F.2d at 151 (ruling that plaintiff has alleged sufficient injury to confer standing and stating, "In so ruling, we attach considerable weight to the fact that standing has not been an issue in the Supreme Court in similar cases").

The plaintiffs allege that Mississippi's enactment of HB 1523 endorses religious beliefs that they do not hold and thereby conveys a message that they "are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Santa Fe*, 530 U.S. at 309–10. Relying on the Supreme Court's opinion in *Valley Forge Christian College v. Americans*

6

*United for Separation of Church & State, Inc.* 454 U.S. 464, 483 (1982), the panel opinion states that "[a]llowing standing on [this] basis would be indistinguishable from allowing standing based on a 'generalized interest of all citizens in' the government's complying with the Establishment Clause without an injury-in-fact." *Barber* 860 F.3d at 354. That is simply not so. In *Valley Forge*, a group of plaintiffs dedicated to the separation of church and state sought to challenge the transfer of federal property to a religious educational institution. 454 U.S. at 468–69. None of the plaintiffs lived in or even near Pennsylvania, where the property at issue was located. *Id.* at 486–87. The Court held that the plaintiffs did not have standing, stating, "Their claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court." *Id.* at 487.

The plaintiffs in the present case are citizens of Mississippi and are subject to its laws; to allow standing here would not give an improper venue to "generalized disagreement with activities in a place in which [they] have no connection." *Freedom from Religion Found. Inc v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 478 (3d Cir. 2016) (citing *Valley Forge*, 454 U.S. at 482–83); *see also, e.g., Catholic League for Religious & Civil Rights v. City & Cty. of S.F.*, 624 F.3d 1043, 1052 (9th Cir. 2010) (en banc) (a "psychological consequence" constitutes concrete harm where it is "produced by government condemnation of one's own religion or endorsement of another's *in one's own community*" (emphasis added)); *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 683 (6th Cir. 1994) (practices in one's "own community may create a larger psychological wound than some place we are just passing through"); *Saladin v. City of Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987) (plaintiffs "have

more than an abstract interest" where they are "part of [the relevant community]").

The plaintiffs' allegations are thus sufficient to establish their standing to bring a challenge under the Establishment Clause. This conclusion is consistent with the holdings of at least two of our sister circuits, which have recognized that stigmatic harm caused by government policies or regulations to individuals within their own political community is sufficient to establish standing for purposes of the Establishment Clause. *See Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 583 (4th Cir. 2017) (en banc) ("IRAP"); *Catholic League*, 624 F.3d at 1052.

In *Catholic League*, the Ninth Circuit, sitting en banc, determined that a group of Catholic San Francisco residents had standing to challenge a non-binding resolution by the Board of Supervisors that condemned their beliefs regarding adoptions by same-sex couples. 624 F.3d at 1046–48. The court explained:

> At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination. Had a Protestant in Pasadena brought this suit, he would not have had standing. Catholics in San Francisco, on the other hand, have sufficient interest, so that well-established standing doctrine entitles them to litigate whether an anti-Catholic resolution violates the Establishment Clause. . . . Standing is not about who wins the lawsuit; it is about who is allowed to have their case heard in court. It would be outrageous if the government of San Francisco could condemn the religion of its Catholic citizens, yet those citizens could not defend themselves in court against their government's preferment of other religious views.

*Id.* at 1048 (cleaned up).

The panel opinion states, "Because HB 1523 is not a specific condemnation of an identified religion challenged by its adherents, the standing analysis in *Catholic League* is inapposite." *Barber*, 860 F.3d at 355 n.9. However, this reading of *Catholic League* elides that case's central observation:

> A psychological consequence does not suffice as concrete harm where it is produced merely by observation of conduct with which one disagrees. But it does constitute concrete harm where the psychological consequence is produced by government condemnation of one's own religion *or endorsement of another's in one's own community*.

624 F.3d at 1052 (cleaned up) (emphasis added). The Ninth Circuit's recognition of the concrete injury a plaintiff suffers as a result of his government's endorsement of another religion is further illustrated in that court's statement that "[w]ere the result otherwise . . . a resolution declaring Catholicism to be the official religion of the municipality would be effectively unchallengeable." *Id.* at 1048.

In *IRAP*, the Fourth Circuit, sitting en banc, found that a Muslim lawful permanent resident of the United States had standing to challenge an Executive Order banning immigration from certain Muslim-majority countries. 857 F.3d at 572–75, 583. The panel opinion here states that *IRAP* is distinguishable because the Executive Order at issue in that case would have barred the plaintiff's wife from entering the country and thereby prolonged their separation. *Barber*, 860 F.3d at 355. But while the Fourth Circuit did recognize this effect as an injury sufficient to support standing, it also recognized as a "distinct" injury the fact that the Executive Order "sends a state-sanctioned message condemning his religion and causing him to feel excluded and marginalized in his community." *IRAP*, 857 F.3d at 583. This stigmatic harm, the court found, also showed sufficient "personal contact" with

the alleged establishment of religion to bring suit. *Id.* The court noted, "This harm is consistent with the '[f]eelings of marginalization and exclusion' injury we recognized in *Moss* [*v. Spartanburg County School District Seven*, 683 F.3d 599 (4th Cir. 2012)]." *IRAP*, 857 F.3d at 585.

In *Moss*, the Fourth Circuit held that a non-Christian family had standing to challenge a public school's policy of conferring academic credit for off-campus religious instruction from a Christian school. 683 F.3d at 607. The court stated that "because the [family members] are not Christians, the School District's alleged Christian favoritism made them feel like 'outsiders' in their own community." *Id.* Notably, the court concluded:

> Feelings of marginalization and exclusion are cognizable forms of injury, particularly in the Establishment Clause context, because one of the core objectives of modern Establishment Clause jurisprudence has been to prevent the State from sending a message to non-adherents of a particular religion "that they are *outsiders*, not full members of the political community."

*Id.* (quoting *McCreary Cty. v. ACLU*, 545 U.S. 844, 860 (2005)).

## II

Until the panel opinion in this case, our court's precedent was not in conflict with these holdings. The panel opinion discusses a number of cases involving religious exercises and displays and argues that those cases either involved or required a "personal confrontation"—a physical exposure in all those cases—that the panel opinion does not find in the instant case. *See Barber*, 860 F.3d at 353–54 (discussing *Murray*, 947 F.2d 147 (religious symbol in city insignia); *Staley v. Harris Cty.*, 485 F.3d 305 (5th Cir. 2007) (en banc) (addressing mootness in context of removal of religious monument, which was relief sought by plaintiff); *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494 (5th Cir. 2007) (en banc) (practice of religious invocations)). But these cases are not on point because this case deals neither with a religious exercise nor with a

10

religious display. Instead, the plaintiffs challenge a state statute, similar to the school districts' policies in *Santa Fe* and *Moss*, the Board of Supervisors' resolution in *Catholic League*, and the executive order in *IRAP*. A physical confrontation is not required in such a case—the stigmatic harm that flows from the enactment of the law or the adoption of the policy tending to make the plaintiffs feel marginalized or excluded in their own community is sufficient.

In attempting to establish that stigmatic harm is not sufficient to create standing even in cases involving challenges to official policy or law, the panel opinion cites *Littlefield v. Forney Independent School District*, 268 F.3d 275, 294 n.31 (5th Cir. 2001), for the proposition that "[w]here a statute or government policy is at issue, the policy must have some concrete applicability to the plaintiff." *Barber*, 860 F.3d at 353. But *Littlefield* does not stand for this proposition. In *Littlefield*, public school students and their families argued that the opt-out procedures for the school district's mandatory uniform policy favored certain established religions at the expense of others and thus violated the Establishment Clause. 268 F.3d at 282. Finding that the *Littlefield* plaintiffs had standing, this court observed that the plaintiffs' "direct exposure to the [opt-out] policy satisfies the 'intangible injury' requirement to bring an Establishment Clause challenge." *Id.* at 294 n.31. However, the *Littlefield* court in no way suggested that such "direct exposure" to the policy was *required* to establish standing—the panel opinion conflates necessity with sufficiency. Moreover, as the plaintiffs note in their petition for rehearing, HB 1523 is an exemption from generally applicable laws, just like the opt-out in *Littlefield* was an exemption from a generally applicable dress code. The panel opinion does not explain how the plaintiffs' exposure to HB 1523 is any less "direct" than the *Littlefield* plaintiffs' exposure to the opt-out policy.

**

The First Amendment "preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred." *Cty. of Allegheny v. ACLU*, 492 U.S. 573, 593 (1989) (cleaned up). The courts in *Catholic League*, *IRAP*, and *Moss* recognized, consistent with the Supreme Court's explication of core Establishment Clause principles in *Santa Fe*, that the stigmatic harm that flows from the enactment of a law or adoption of official policy that deems a non-adherent plaintiff an "outsider" in his own community is sufficient to confer standing. By denying standing in the present case, the panel opinion falls into grievous error, unjustifiably creates a split from our sister circuits, and rejects pertinent Supreme Court teachings. To reference what the Ninth Circuit in *Catholic League* recognized, under the panel opinion's holding, a law "declaring [Episcopalianism] to be the official religion of [Mississippi] would be effectively unchallengeable." 624 F.3d at 1048. The panel opinion's holding will thus deny citizens a forum in which to challenge "the evils against which the Establishment Clause was designed to protect." *Mueller v. Allen*, 463 U.S. 388, 399 (1983).

Because I believe that this court has abdicated its mandate to decide the substantive claims raised by the plaintiffs, I respectfully dissent from the denial of rehearing en banc.