# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 4, 2022

Lyle W. Cayce
Clerk

No. 20-40491

Yasmin Ruvalcaba,

*Plaintiff—Appellant*,

*versus*

Angleton Independent School District; Jerry Crowell,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:18-CV-243

Before Jolly, Willett, and Oldham, *Circuit Judges*.
Per Curiam:*

Yasmin Ruvalcaba appeals the dismissal of her § 1983 claim against Defendant Jerry Crowell and the summary judgment in favor of Defendant Angleton Independent School District (AISD) on her Title IX claim. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-40491

I

We begin by recounting the factual allegations set forth in Ruvalcaba's complaint. Ruvalcaba was a ninth-grader at Angleton High School (AHS) in 2014. On October 7 of that year, she was playing saxophone by herself in one of the school's music practice rooms when one of her male classmates, "J.F.," entered the practice room and asked Ruvalcaba to help him prepare for an upcoming competition in which their marching band was to compete. When she agreed, he used a music stand to block the window in the practice room door so that passersby could not see into the room. He then allegedly ordered Ruvalcaba to get on her knees, at which point he unfastened his pants and forced her to perform oral sex on him. Later that day, Ruvalcaba informed one of her teachers that J.F. had exposed himself to her, but she did not mention the alleged assault. The teacher immediately notified AHS Assistant Principal Jay Janczak, who took Ruvalcaba aside and asked her to write down what had happened. When he saw her write the words, "he made me get on my knees and I did," Janczak took the incomplete statement away and told Ruvalcaba that she could finish it later. Janczak then took Ruvalcaba to the AISD police department's office, where administrators contacted her mother, Laura Jaso. When Jaso arrived at the office shortly thereafter, AHS Assistant Principal Christina Todd gave Jaso Ruvalcaba's written statement from earlier that day. Noticing the statement seemed incomplete, Jaso asked Todd what else had happened, to which Todd replied, "We are investigating. . . . We'll look into it tomorrow. We need to determine if it's a crime," but also warned that J.F. had not been "told not to come to school."

Later, as Jaso was on her way home with Ruvalcaba, Ruvalcaba alleged for the first time that J.F. had forced her to perform oral sex on him. Jaso immediately took Ruvalcaba to the municipal police station. to report the

2

assault. Angleton police, upon hearing Ruvalcaba's account, contacted AISD, which sent an AISD police officer and AHS Principal Jerry Crowell to speak with Ruvalcaba at the station. Crowell, upon arriving at the station, first asked to speak to Ruvalcaba alone. According to the complaint, Crowell then commented in the presence of Ruvalcaba, Jaso, and several officers that, "women lie about these things all the time." Crowell proceeded to take Ruvalcaba into a separate room for questioning. After several minutes, Jaso became concerned and opened the door to the room to find Ruvalcaba on the floor on her hands and knees, with Crowell sitting several feet away in an office chair. Jaso demanded an explanation of what was happening, to which Crowell allegedly replied, "I didn't do anything; I just needed her to show me in order to investigate." Jaso then took her daughter, who was crying, and left the station.

The next day, Jaso arrived at the school to be greeted by Crowell and AISD Officer Chris Dubois. They asked to speak with Ruvalcaba, who was at home recovering from the day before. Jaso agreed and left to return with her daughter later that day. Dubois and Crowell proceeded to question Ruvalcaba in a manner her complaint describes as antagonistic. She alleges that Dubois "banged on the table" and made such remarks as, "I know you're lying and when I prove it, you're going to jail. I will file charges on you"; whereas Crowell largely "just sat there." The complaint accuses Crowell of comparing what Ruvalcaba had told him the day prior and "trying to find discrepancies in her story," and of later declaring that the attack did not happen. Seeing that her daughter was becoming increasingly distraught, Jaso decided to end the questioning and take her home. The following day, Jaso visited AISD's Title IX Coordinator Mark Comneck and complained about Crowell and Dubois' treatment of Ruvalcaba. Comneck said he would discuss the matter with the school and told Jaso that Crowell would call her back, but, according to the complaint, Crowell never did so. Meanwhile,

No. 20-40491

Ruvalcaba's mental state was worsening. She became depressed, stopped attending school, and twice was hospitalized for suicide attempts. She withdrew from AHS soon after and enrolled at a nearby private school.

\*     \*     \*

Ruvalcaba filed suit in August 2018. Her claims, in relevant part, were (1) that Crowell had "subjected [her] to violations of her right to equal protection of law by failing to investigate [J.F.'s] misconduct, failing to appropriately discipline [him], forcing [Ruvalcaba] to reenact the attack, and manifesting deliberate indifference to the sexual assault that occurred" at AHS; and (2) that AISD had violated her rights under Title IX by failing to adequately protect her from gender-based harassment at school.

Crowell responded with a motion to dismiss the § 1983 claim against him for failure to state a claim. The magistrate judge recommended granting Crowell's motion. *See* No. 3:18-CV-00243, 2019 WL 2996536 (S.D. Tex. June 6, 2019). Ruvalcaba filed objections to that recommendation, accompanied by new factual allegations previously unknown to the magistrate judge. Among these were affidavits that Ruvalcaba argued were evidence of Crowell's disparate treatment of male and female students. One was from a female former AHS student ("J.J.") who claimed, with few details, she had been assaulted by a student at school but that Crowell "did not provide [her] with any protection" afterwards, and hugged J.J. when she reported the incident to him (which "made [her] uncomfortable"). The other declaration was from Jaso, who recounted a phone conversation she had with a male former AHS student ("R.M.") who had complained to Crowell that J.F. had spread sexual rumors about R.M. back when the two were classmates. According to R.M., school administrators did not make him "re-enact the rumor" but instead simply told him "they would take care of it"—though "[n]either male student got in trouble for the incident." The

4

No. 20-40491

district judge was unpersuaded and adopted the magistrate's recommendation to dismiss the § 1983 claim against Crowell. *See* 2019 WL 2994638 (S.D. Tex. July 9, 2019).

AISD then moved for summary judgment on Ruvalcaba's Title IX claim. AISD produced sworn denials of some of her complaint's allegations (including Crowell's affidavit denying ever having said, "women lie about these things all the time"), as well as evidence showing the extent of AISD's investigation—which concluded based on witness interviews and security camera footage that J.F. did not assault Ruvalcaba.[1] Ruvalcaba responded to AISD's motion with, among other things, her sworn statement purporting to show that AISD had "actual knowledge" of the sex-based harassment against her. After considering the summary-judgment record, the magistrate judge recommended granting AISD's motion as to the Title IX claim. *See* 2019 WL 8273375 (Dec. 19, 2019). Again, Ruvalcaba's objections to the recommendation included new evidence—namely, her and Jaso's sworn declarations stating that Crowell had indeed remarked to them that "women lie about these things all the time." The district judge declined to consider these materials and adopted the magistrate's recommendation of summary judgment for AISD. *See* 2020 WL 1431602 (Mar. 23, 2020). Ruvalcaba then appealed.

---

[1] Also included was a letter from the U.S. Department of Education's Office of Civil Rights (OCR) to the AISD superintendent summarizing its investigation into Ruvalcaba's complaint "that AISD failed to address her report of sexual assault in a timely and effective manner." OCR had "reviewed [AISD's] Title IX grievance procedures in place during . . . the 2014-2015 school year," and had "determined that [they] provide[d] a prompt and equitable resolution of complaints alleging sex-based discrimination and harassment" and thus "satisf[ied] the Title IX regulatory requirements."

## II

## A

We begin by considering whether the district court properly dismissed Ruvalcaba's § 1983 claim against Crowell. We review *de novo* a dismissal for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019). We "accept as true all well pleaded facts in the complaint," *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986), "and then determine whether they plausibly give rise to an entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But we neither "strain to find inferences favorable to the plaintiffs," *Westfall v. Miller,* 77 F.3d 868, 870 (5th Cir. 1996), nor "accept conclusory allegations" or "unwarranted deductions," *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution . . . by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Ruvalcaba alleges that Crowell, who all agree was acting under color of law at all relevant times, denied her equal protection on the basis of her sex. *See* U.S. CONST. amend. XIV. It is well-settled that "§ 1983 suits based on the Equal Protection Clause" are "available to plaintiffs alleging unconstitutional gender discrimination in schools." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009).

A "violation of equal protection occurs . . . when [a state actor] treats someone differently than others similarly situated." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988). But official action that "does not appear to classify or distinguish between . . . persons or groups . . .—even if irrational—does not deny . . . equal protection of the laws." *Id.* A plaintiff "must allege . . . that [s]he received treatment different from that received by similarly

situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

Ruvalcaba argues that she sufficiently stated a claim that Crowell denied her equal protection on the basis of her sex, pointing to allegations in her complaint that he failed to "investigate [J.F.'s] misconduct" or "appropriately discipline [him]," and "forc[ed] [Ruvalcaba] to reenact the attack." Assuming (as we must at this stage) that these allegations are true, they would not amount to an equal-protection violation because they are not accompanied by factual allegations suggesting that Crowell treated Ruvalcaba less favorably than he would have treated a male student under similar circumstances. Ruvalcaba's allegations certainly portray Crowell as callous and indifferent. But the fact that "school officials may not have adequately responded to [a student's] complaints" does not itself "rise[] to the level of an equal protection violation." *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004). Rather, a plaintiff must allege facts "show[ing] that discrimination against women is the 'motivating factor'" behind officials' inaction. *Beltran v. City of El Paso*, 367 F.3d 299, 305 (5th Cir. 2004).

Ruvalcaba's complaint did not clear this bar. Ruvalcaba relies heavily on her allegation that Crowell remarked, "women lie about these things all the time." This accusation, if true, would be a deplorable expression of sexist sentiment, but it does not state a claim for denial of equal protection. Mere "exposure to a discriminatory message, without a corresponding denial of equal treatment, is insufficient to plead injury in an equal protection case." *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017). While such comments may constitute evidence of discriminatory intent, *see Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999), they cannot, without more concrete allegations of disparate treatment, amount to equal-protection violations. Indeed, we have rejected equal-protection claims in the past when they were founded upon mere allegations of bigoted remarks coupled with inconsiderate (though

No. 20-40491

not apparently discriminatory) treatment. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 213 (5th Cir. 2009); *Priester*, 354 F.3d at 423–24; *Clayton ex rel. Hamilton v. Tate Cty. Sch. Dist.*, 560 F. App'x 293, 297–98 (5th Cir. 2014); *cf. Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415 (5th Cir. 2015).

Ruvalcaba falls back onto the materials she presented for the first time in her objections to magistrate judge's recommendation that her § 1983 claim be dismissed. In particular, she calls our attention to "affidavits and text messages" that she believes evince Crowell's "history of treating female students bringing harassment or assault concerns worse than male students."[2] First, says Ruvalcaba, Crowell "would give female students unwanted hugs," citing the statement of J.J. (a female former AHS student) who claimed to have been assaulted in October 2017 by another student at school. J.J.'s statement alleged that Crowell had hugged J.J. when she reported the incident to him, even though she "did not want him to touch [her]." While J.J. claims that Crowell's hugs "made [her] uncomfortable," her statement does not indicate that she ever conveyed to him that his actions were unwelcome. More importantly, J.J.'s statement hardly shows a systemic pattern of sex discrimination by Crowell in the form of "unwanted . . . physical contact," since Ruvalcaba (the only other female student whose complaints against Crowell are part of this record) does not accuse him of touching her inappropriately. Similarly, J.J.'s account also tends to undercut Ruvalcaba's contention that Crowell made her reenact her assault because of his animus against female students, in that J.J. does not report that Crowell made her reenact her assault.

---

[2] We assume *arguendo* that the district court should have considered these materials in ruling on the 12(b)(6) motion; either way, they do not affect our conclusion.

Ruvalcaba also cites J.J.'s statement as an illustration of how Crowell "generally did nothing to address [female students'] concerns," in that he "did not provide [J.J.] with any protection" after she reported an assault. Even assuming that is true, Ruvalcaba's other account of a male former Angleton High student (R.M.) cuts against the notion that sex discrimination was afoot. R.M. purportedly complained to Crowell in 2016 that J.F. had spread sexual rumors about R.M., and that school administrators did not make R.M. "re-enact the rumor" but instead simply said "they would take care of it"—though "[n]either male student got in trouble for the incident." But the fact that no one was disciplined in response to a male student's complaint undermines, rather than supports, a claim of sex discrimination. Nor can anything be gleaned from the fact that Crowell did not make R.M. "re-enact the rumor" (however that might be done); an allegation of spreading inappropriate rumors is simply too different from one of sexual assault to give rise to the inference that Crowell's differential handling of the respective complaints was due to gender bias. Lastly, although both former students make the same accusation (almost verbatim) that "[i]t [wa]s [their] experience that Mr. Crowell treated girl students differently than boys," this contention is conclusory and therefore insufficient to overcome a 12(b)(6) motion to dismiss. *See Southland Sec. Corp.*, 365 F.3d at 361.

For these reasons, dismissal of Ruvalcaba's § 1983 claim was proper.

B

We next consider whether the district court properly granted summary judgment for AISD on Ruvalcaba's Title IX claim. This too we review *de novo. Fennell*, 804 F.3d at 407. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Title IX provides, "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A school district covered by Title IX "may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit,' and (5) the district was deliberately indifferent to the harassment." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (alteration in original) (quoting *Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 650 (1999)). Here, the district court held that there was no genuine dispute that (1) AISD had no actual knowledge that Ruvalcaba was being harassed, and (2) that AISD was not deliberately indifferent in its handling of her reported assault. We agree with the district court's conclusions on both points.

First, as to AISD's knowledge, it is undisputed that AISD only learned of the assault allegation at issue here on October 7, 2014—the day it purportedly occurred. Ruvalcaba argues that she provided summary-judgment evidence in opposition to AISD's evidence that showed that the District knew prior to J.F.'s alleged assault that he had been harassing her. Ruvalcaba's declaration in opposition to AISD's motion reads as follows:

> [J.F.] repeatedly and openly bullied me in many ways. He verbally attacked me in front of others, graphically threatened me, and encouraged other students to harass me. The bullying started in August 2014 and it occurred during band classes and band practices. The bullying escalated when [he] repeatedly

> and intentionally would take my personal property, mishandle my Epi-Pen with intent to break it, make inappropriate noises and comments about the Epi-Pen's shape and my use of it. I reported to [AHS band director] Nathan Carter numerous times that [J.F.] was bullying me, that he was taking possession of my personal belongings including the Epi-pen, threatening to break my Epi-pen, and damaging my purse. I reported to Mr. Carter that [J.F.] was name-calling and would use his body to make inappropriate movements. I asked Mr. Carter to make [J.F.] stop. Mr. Carter did not do anything to stop [J.F.] and the bullying continued.

These allegations, however, describe only generalized bullying and do not suggest that AISD staff had knowledge that J.F. was engaged in the kind of harassment "on the basis of sex" with which Title IX is concerned. They do not create a genuine dispute of material fact as to AISD's actual knowledge of sexual harassment. *See I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 377 (5th Cir. 2019) (student telling administrators that she was "severely bullied" did not put them on notice of sexual harassment); *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (student telling administrators that boys were "bothering her" did not put staff on notice of sexual harassment).

Even if we construe the references above to "inappropriate" comments by J.F. as describing sexually suggestive remarks, Title IX does not impose liability on school administrators based on their knowledge that a student made remarks "merely tinged with offensive sexual connotations." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quoting *Frazier v. Fairhaven Sch. Comm.,* 276 F.3d 52, 66 (1st Cir. 2002)). Nor does Ruvalcaba's reliance on R.M.'s claim (recounted secondhand in Jaso's statement) that J.F. was spreading sexually suggestive

rumors show AISD's actual knowledge of a tendency on J.F.'s part towards sexual harassment, since the rumor incident reportedly happened more than a year after Ruvalcaba claims she was assaulted.

Ruvalcaba also did not produce evidence creating a genuine dispute of material fact as to whether AISD was deliberately indifferent in its handling of her assault complaint. "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Rather, a school district's "response to the harassment or lack thereof [must be] clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Here, uncontradicted evidence in the record discloses that, far from "being clearly unreasonable," AISD's "investigation was thorough and appropriate." *I.F.*, 915 F.3d at 377. Administrators reported the incident to AISD police within a day of learning of it, and AISD officers and staff conducted witness interviews (including with the alleged victim and perpetrator, as well as numerous others who interacted with either of them on the day of the purported assault), reviewed security camera footage, and conducted a lie detector test of J.F. (who passed). AISD administrators concluded from their several-months-long investigation that the assault had not occurred as Ruvalcaba had alleged. Even if this conclusion were "in error" (which we in no way suggest it was), AISD's investigation certainly was not so obviously inadequate as to constitute deliberate indifference for Title-IX purposes. *Doe*, 220 F.3d at 388.

Ruvalcaba points out what she believes are deficiencies in AISD's investigation. First, she contends that AISD staff were "inclined to disbelieve Yasmin as a woman from the outset." We see little indication that any such disbelief resulted in an less thorough investigation, and even if it

had, Ruvalcaba offers no evidence that investigators disbelieved her because she was female rather than because of her history of reporting false accusations to school administrators. Nor did Ruvalcaba offer evidentiary support for her principal example of gender bias—the accusation that Crowell said, "women lie about these things all the time"—except the allegation in her complaint itself, which is not competent summary-judgment evidence, *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam); whereas Crowell offered into evidence his sworn denial that he made the remark. Ruvalcaba also claims the investigation was flawed because AISD investigators "ignored the available medical evidence in favor of the already assumed result." She cites two places in the record where the evidence discloses that she tested positive for Chlamydia at some point after the alleged assault. However, she points to no evidence that she contracted the disease as a result of the alleged assault, as her brief claims. Indeed, when Officer Dubois attempted to meet with Jaso to follow up regarding this information, she did not show up, and later told AISD staff that the meeting was off and all further communication regarding her daughter's assault accusations would be through Jaso's attorney. In sum, Ruvalcaba has given no reason to believe AISD's investigation was even "inept, . . . ineffective, or negligent"—let alone deliberately indifferent. *Doe*, 153 F.3d at 219.

Finally, we note that much of what Ruvalcaba apparently considers her strongest evidence was presented for the first time in her objections to magistrate judge's report and recommendation that AISD's summary-judgment motion be granted. The district judge noted as much in refusing to consider such evidence, before ultimately adopting the magistrate's recommendation *See* 2020 WL 1431602, at *1 (S.D. Tex. Mar. 23, 2020). When litigants "objecting to a magistrate judge's report and recommendation on summary judgment . . . submit additional evidence for the district court's de novo review," "the district court is not necessarily

required to accept the new evidence" but instead "has discretion to determine whether, in light of all pertinent circumstances, the new evidence should be accepted." *Davis v. Hernandez*, 798 F.3d 290, 292 (5th Cir. 2015). We review such a decision for abuse of discretion. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003). In exercising this discretion, a district court should consider "(1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the summary judgment motion; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted." *Id.* at 862.

The evidence submitted by Ruvalcaba after the magistrate's report consisted of her and her mother's sworn affidavits repeating allegations from the complaint, with certain additional details. Ruvalcaba offers no reason why this evidence—which undoubtedly was available to her from the time this suit was filed—could not have been presented for the magistrate judge's consideration. As we have held under like circumstances where a litigant has "provid[ed] no reason why it failed to introduce the evidence earlier," we hold here that "the district court clearly did not abuse its discretion in disallowing this evidence." *Id.*; *see also Lewis v. Igwe*, 252 F. App'x 626, 627 (5th Cir. 2007) (per curiam); *Reed v. Stephens*, 739 F.3d 753, 769 n.5 (5th Cir. 2014).

For these reasons, summary judgment for AISD was proper.

## III

The judgment of the district court is AFFIRMED.